■ WILLIE J. KOCUREK, Respondent, v HOME DEPOT, U.S.A.P., INC., Defendant, and MILRIC CONSTRUCTION CORP. et al., Appellants. (And a Third-Party Action.) [730 NYS2d 74] —Order, Supreme Court, New York County (Barbara Kapnick, J.), entered December 20, 2000, which denied defendant Madjex Cabinets' motion for summary judgment dismissing the complaint and all cross claims and counterclaims against it, denied defendant Charles Wolfe & Sons' motion for summary judgment dismissing plaintiff's claims for common-law negligence, and denied the motion for summary judgment of Milric Construction Corp., dismissing the complaint against it, *sub silentio*, unanimously modified on the law, and the motions of defendants Madjex Cabinets and Milric Construction granted, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants Madjex Cabinets and Milric Construction Corp. dismissing the complaint as against them.

Plaintiff Willie J. Kocurek, an employee of third-party defendant Forman Industries, Inc., commenced this lawsuit seeking damages for injuries he sustained while unloading particle

board panels from a trailer to a construction site for a new store of defendant Home Depot. The panels had been loaded into the trailer by employees of Madjex. Home Depot, the owner of the site, had contracted with Milric to construct the store, with Forman to install the store fixtures, and with Madjex to furnish the panels. Wolfe was to transport the panels to the site. Charles Wolfe, Jr. was the driver and operator of the tractor-trailer.

In his complaint, plaintiff alleged that his injuries were caused by defendants' negligence in failing, *inter alia*, to properly stack and load the panels, warn him of the dangerous condition, and provide a safe work place in violation of Labor Law § 200 (1), § 240 (1) and § 241 (6).

Plaintiff testified that on the day of the accident, his foreman, Peter Herkel, assigned him and two others to unload the trailer. The panels, roughly 20 of them, were stacked together vertically in one row against the side of the trailer. When plaintiff began unloading the panels, which had been unstrapped, he would grab the board closest to him and slide it about five feet to the back of the trailer, where two co-workers would take it and place it on a cart. During the unloading, he was supervised by Herkel. According to Herkel, he instructed the three workers to unload the panel by having one of them hold the panels while the other two carried the panels off one at a time. Herkel observed the workers unload the panels without difficulty for about 15 minutes.

Plaintiff testified that at the time of the accident, he was standing inside the trailer waiting for his co-workers to fill the cart, when approximately 10 to 12 remaining panels tipped over and fell, striking him on the legs. Herkel, who was called over to the trailer after the accident, saw plaintiff on the floor of the trailer, with panels next to him.

Wolfe's account of the events surrounding the accident differs from that of plaintiff and Herkel. Although neither plaintiff nor Herkel place Wolfe inside the trailer at any time during the unloading, he testified that he assisted in the unloading. According to Wolfe, only two workers came to unload the trailer, and he realized that they could not unload the panels by themselves. He decided to help them, even though he would not be paid for the work. He would loosen the strap, slipping out the panel closest to him, which the two workers would then grab, while he held the other panels against the wall of the trailer with one of his hands. The panels would fall over if not properly strapped or held against the wall of the trailer. Holding the panels did not require much force because their weight

was mostly on the floor of the trailer. After a period of unloading, a coffee truck arrived and the three decided to take a break. Wolfe secured the panels before leaving the trailer. About a half hour later, after sitting in the cab of the tractor eating a sandwich, Wolfe went to the back of the trailer, and saw "the older of the two men laying on the floor" of the trailer, looking hurt. He also saw that the panels were strapped to the wall of the trailer.

All four defendants moved for summary judgment dismissing the complaint, arguing that they did not supervise or direct plaintiff's work so as to give rise to liability, and that plaintiff failed to establish the existence of any Labor Law violations. Additionally, Wolfe argued that it did not load the trailer, and Madjex argued that it was not negligent in loading the trailer.

In opposition, plaintiff submitted the affidavit of Thomas Cocchiola, a licensed professional engineer and board certified safety professional. Cocchiola opined that the vertical shipping and transportation of the panels violated 12 NYCRR 23-2.1 (a) (1) and OSHA Safety and Health Standards requirements for handling and storage of materials, and constituted a departure from "good accepted safety practices," which "were a cause of the accident." The panels should have been shipped flat on the floor or secured with additional straps. In response, Madjex submitted the affidavit of Terry Morgan, a trucking and distribution expert registered as a transportation practitioner, who asserted that securing the panels on the side of the trailer was the safest way to transport the panels according to trucking industry standards.

The IAS court agreed with Home Depot that it did not supervise or control plaintiff's work, and dismissed the common-law negligence claim and claims under Labor Law § 200 (1) and § 240 (1), the latter claim without opposition. The court dismissed plaintiff's claim under Labor Law § 241 (6), finding the only specific violation of the Industrial Code regulation set forth by plaintiff to be inapplicable, since the accident did not occur in a "passageway, walkway, stairway or other thoroughfare." The court also dismissed the Labor Law claims against Wolfe, but did not dismiss the common-law claim. Without addressing the merits of the Labor Law claims against Madjex, the court denied Madjex's motion in its entirety on the ground that the conflicting affidavits of plaintiff's and Madjex's engineering experts raised an issue of fact as to whether Madjex was negligent in failing to properly load the panels into the truck. The court did not address Milric's motion for summary judgment.

Madjex's and Milric's motions for summary judgment should have been granted in their entirety. It is undisputed that Forman, plaintiff's employer, had the sole authority to control and supervise the unloading of the trailer. In fact, Madjex was not present at the work site. Therefore, Madjex, neither an owner nor a general contractor, cannot be liable under Labor Law § 200 (1), § 240 (1), or § 241 (6). The claim under Labor Law § 200 (1) against Milric fails for the same reason. The claim under Labor Law § 241 (6), against Milric, which could still be liable as a general contractor, even in the absence of control or supervision, fails because the Industrial Code regulation plaintiff relies upon, 12 NYCRR 23-2.1 (a) (1), is inapplicable to this case, as a transportation trailer does not constitute a storage area in the work site, or, as the court found, a "passageway, walkway, stairway or other thoroughfare" as contemplated by the regulation. The claim under Labor Law § 240 (1) against Milric also fails because plaintiff was not exposed to any dangerous condition related to height, since plaintiff and the panels were on the same level.

Cocchiola's affidavit does not raise an issue of fact as to whether Madjex was negligent in loading the truck, and whether such negligence was the proximate cause of plaintiff's injuries. Cocchiola, who has no training or experience in the trucking industry, failed to state that the loading and stacking of the panels constituted a departure from industry standards. On the other hand, Morgan, a trucking and distribution expert whose area of expertise covers standard practice and procedures in the loading and unloading of trucks, opined that Madjex properly loaded and secured the panels as per industry standards. In addition, the two regulations that Cocchiola argued the loading of the truck violated are inapplicable to the facts of this case. 12 NYCRR 23-2.1 (a) (1) is inapplicable for the reasons stated above, and OSHA is inapplicable because it is limited to the safety practices of employers (*see generally*, *Rizzuto v Wenger Contr. Co.*, 91 NY2d 343). Cocchiola's opinion that Madjex departed from "good accepted safety practices" was therefore without probative value, and inadequate to raise a triable issue of fact as to whether Madjex loaded the truck in an adequate manner. For the same reason, plaintiff's claim against Wolfe for permitting the panels to be loaded in the trailer in a dangerous manner, is without merit.

Finally, we agree with the IAS court that there is an issue of fact as to whether Wolfe was negligent in causing plaintiff's accident. Under the facts as described by Wolfe, a jury could reasonably conclude that he failed to fasten the panels properly

before the break, and that that failure caused the panels to fall on plaintiff when he returned to the trailer to resume the unloading. Concur—Rosenberger, J. P., Mazzarelli, Andrias, Buckley and Friedman, JJ.