(March 13, 2003)

■ LESLIE C. REILLY, Respondent-Appellant, v NEWIREEN ASSOCIATES et al., Appellants-Respondents. NEWIREEN ASSOCIATES et al., Third-Party Plaintiffs-Respondents, v CENTRIFUGAL ASSOCIATES, INC., Third-Party Defendant-Appellant-Respondent. [756 NYS2d 192] —Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered December 10, 2001, which (1) granted defendants' and third-party defendant's motions to dismiss plaintiff's Labor Law § 241 (6) claim and denied plaintiff's cross motion for leave to amend her complaint and bill of particulars; (2) denied defendants', Newireen Associates, Pressmad Corp., Isetan of America, Barney's Inc., Madneer Corp. (Newireen) and Lehrer McGovern Bovis (LMB), motion for summary judgment seeking dismissal of plaintiff's Labor Law § 200 and common-law negligence claims and granted Newireen/LMB's motion for summary judgment on that portion of their third-party complaint for indemnification of legal costs against third-party defendant Centrifugal Associates, Inc. (Centrifugal); (3) denied defendant Universal Builders Supply, Inc.'s (Universal) motion for summary judgment seeking dismissal of plaintiff's complaint and all cross claims and counterclaims asserted against it, and (4) denied third-party defendant Centrifugal's motion for summary judgment seeking dismissal of plaintiff's complaint and the third-party complaint, unanimously modified, on the law, the motions of Newireen/ LMB, Universal and Centrifugal for summary judgment seeking dismissal of the complaint, all cross claims and third-party claims granted to the extent of dismissing all of said claims

except Newireen/LMB's third-party claim against Centrifugal for indemnification of legal costs, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.

Plaintiff's decedent John Reilly (Reilly) suffered a fatal heart attack a few hours after returning home from work on March 24, 1993. Reilly, a steam fitter, had been working for his employer, Centrifugal, on a construction job at 660 Madison Avenue, a 24-story building owned by Newireen. Newireen hired LMB as construction manager, which, in turn, hired Centrifugal as the heating, ventilation and air conditioning subcontractor and Universal as the subcontractor responsible for installing and maintaining the elevators, hoists and scaffolds.

On the date of the accident, Reilly was working with others to install piping on the 20th through 24th floors of the building. The pipes were 16 inches in diameter, 20 feet long and weighed approximately one ton. The work involved raising the pipes through a vertical shaft, as the workers took turns guiding them through the shaft, floor by floor. At the 18th floor, two pipes would be welded together and then raised to the higher floors. After the pipe was unloaded at the top, Reilly and the others would go back down to the 10th floor and repeat the process.

Normally, the workers and their tools would be transported between the floors by a personnel hoist known as an "Alimac," which was a cage that rode up and down the exterior of the building. There were two personnel Alimacs at this work site, one on the 61st Street side of the building that went up to the 24th floor (61st Street hoist), and one on the 60th Street side that only went up to the 15th floor.

At approximately 10:30 A.M. on the date of Reilly's death, while a second pipe was being raised that day, the 61st Street hoist broke down. The hoist operator, an LMB employee, reported the breakdown to the LMB superintendent, who radioed the information to Universal's office requesting repairs. Meanwhile, Reilly's supervisor, another Centrifugal employee, directed that the work continue because the pipe could not be left dangling in the shaft. This necessitated that Reilly and the others walk up at least 14 flights of stairs to finish raising the pipe, and then do so again when another pipe was raised after lunch. Reilly went home at 3:30 P.M. and laid down to rest. He subsequently had a heart attack and was pronounced dead at

7:32 P.M. that evening.[1] His family applied for and received workers' compensation benefits.

In March 1995, Reilly's estate instituted this wrongful death action against Newireen, LMB and Universal, alleging violations of Labor Law §§ 200, 240 (1) and § 241 (6) and common-law negligence. Plaintiff's theory of liability is that Reilly's death occurred as the result of overexertion at the construction site due to the malfunctioning hoist. Various cross claims were asserted among the defendants for indemnification and contribution. Newireen and LMB also impleaded Centrifugal, Reilly's employer. The Labor Law § 240 (1) claim was subsequently withdrawn by plaintiff.

After discovery, each of the defendants and the third-party defendant moved for summary judgment. Universal moved to dismiss the complaint and all cross claims and counterclaims asserted against it, arguing that no evidence existed that it was negligent in the repair or maintenance of the Alimac; that there was no causal connection between any alleged negligence by Universal and Reilly's heart attack, which was not foreseeable; and that plaintiff failed to allege a violation of any specific provision of the Industrial Code to support a Labor Law § 241 (6) claim.

Newireen and LMB, represented by the same attorney, moved to dismiss the complaint on the grounds that no proximate cause existed as a matter of law and that they bore no liability under Labor Law § 200 or common-law negligence since neither of them supervised or controlled the methods or means of Reilly's work and neither was responsible for maintaining the hoist. Additionally, Newireen and LMB moved for summary judgment on their indemnification claim for legal costs incurred in defense of the lawsuit, or, alternatively, if the Labor Law claims were not dismissed, for a conditional judgment against Centrifugal for full indemnification.

Centrifugal also moved for summary judgment seeking dismissal of the complaint and the third-party complaint, arguing that it had no responsibility for the operation of the hoist.

Three months later, plaintiff cross-moved to amend the complaint and bill of particulars in order to provide information concerning specific statutory violations on the Labor Law § 241 (6) claim. Neither an amended complaint nor an amended bill of particulars was submitted in support of the cross motion.

---

1. The medical examiner concluded that the cause of Reilly's death was "[p]ulmonary edema due to myocardial infarction, recent and old due to atherosclerotic cardiovascular disease."

The IAS court denied each of the motions seeking dismissal of plaintiff's negligence and Labor Law § 200 claims. Universal's motion was denied on the grounds that issues of fact existed regarding (1) Universal's supervision or control over the workplace, (2) its awareness that the hoist it was responsible for maintaining was broken for such a period of time that the problem should have been corrected and (3) the medical evidence suggesting a causal connection between Reilly's overexertion and his death.

The court denied Centrifugal's motion to dismiss the third-party complaint in which LMB sought contractual indemnification, stating: "It is unclear, however, which entity, if any, was negligent in Reilly's death, and which entity had control over the site or that portion of the site, that might have caused Reilly's death." Although the court did not specifically discuss Newireen/LMB's motion to dismiss the negligence and Labor Law § 200 claims in its decision, other than in its decretal paragraph, the court presumably denied the motion on similar grounds—that issues of fact existed with respect to Newireen/LMB's supervision and control over the work site or their actual or constructive notice of a dangerous condition.

With respect to plaintiff's cross motion, the IAS court denied leave to amend the complaint and bill of particulars and dismissed plaintiff's Labor Law § 241 (6) claims. The court noted that by "so-ordered" stipulation dated October 13, 2000, plaintiff had previously been granted additional time to file a supplemental bill of particulars within 20 days. However, plaintiff did not comply until April 10, 2001, the date she filed her cross motion, and even then, only in response to the various defendants' motions to dismiss the Labor Law § 241 (6) claims. Noting that the cross motion to amend was made a year after the note of issue had been filed, that no reasonable excuse had been offered for the delay and that no proposed supplemental bill was filed with the cross motion, the court denied leave to amend and dismissed the section 241 (6) claims.

The court also granted Newireen/LMB's motion for indemnification of legal costs and disbursements against Centrifugal pursuant to the provision in the parties' subcontract requiring Centrifugal to indemnify the owner, tenants and construction manager for all damages, injuries and claims arising out of Centrifugal's work.

Discussion

Plaintiff's Labor Law § 241 (6) Claims

Plaintiff has cross-appealed from that portion of the IAS court's order which denied her motion for leave to amend her complaint and bill of particulars and dismissed her claims

under Labor Law § 241 (6). Plaintiff argues that her delay in amending the bill of particulars did not prejudice defendants, and further, that the regulations cited in the amended bill are specific enough to support a Labor Law § 241 (6) claim.

Leave to amend was properly denied as plaintiff has failed to provide an explanation for her lengthy delay. In order to state a claim under Labor Law § 241 (6), a plaintiff must identify a specific Industrial Code provision mandating compliance with concrete specifications (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]). The record demonstrates that plaintiff's complaint, filed in March 1995, did not identify any specific Industrial Code provisions violated; nor did her bill of particulars filed four years later in October 1999. Plaintiff filed a note of issue on May 23, 2000, and still no Code provisions had been identified. On October 13, 2000, the IAS court "so-ordered" a stipulation between the parties granting plaintiff an additional 20 days within which an amended bill of particulars could be filed. Plaintiff failed to meet this deadline. It was not until April 10, 2001, six months after the time to amend had expired and almost a year after the note of issue had been filed, and then only in response to the defendants' motions for summary judgment, that plaintiff cross-moved for leave to amend.

While the CPLR mandates that leave to amend pleadings should be "freely given" (CPLR 3025 [b]), the court clearly acted within its discretion in denying leave where plaintiff persistently neglected her obligation to identify violations of specific Code provisions in order to support the Labor Law § 241 (6) claim (*see Del Rosario v 114 Fifth Ave. Assoc.*, 266 AD2d 162, 163 [1999] [plaintiff's request to amend bill of particulars three years after commencement and five months after filing of note of issue properly rejected as untimely and prejudicial]). Accordingly, inasmuch as no violations of the Industrial Code have been cited, the section 241 (6) claims are deficient and must be dismissed against all defendants.

Labor Law § 200 and Common-Law Negligence Claims

Newireen/LMB, Universal and Centrifugal argue that plaintiff's common-law negligence and Labor Law § 200 claims should have been dismissed on the grounds that Reilly's heart attack was not proximately caused by any negligence relating to the malfunctioning hoist. Newireen/LMB and Universal further contend that none of them supervised or controlled the work being performed by Reilly so as to render them liable for his injuries. Additionally, Universal argues that there is no evidence that it was negligent in maintaining or repairing the

hoist, while Centrifugal asserts that it had no responsibility for the hoist.

With respect to defendants' and third-party defendant's motions seeking dismissal of the negligence and section 200 claims, we need not address the issue of causation, since their other arguments have merit and mandate dismissal of these claims. "Section 200 of the Labor Law is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work." (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993].) "An implicit precondition to this duty 'is that the party charged with that responsibility have the authority to control the activity bringing about the injury' (*Russin v Picciano & Son*, 54 NY2d 311, 317)." (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d at 877.)

Thus, "where the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under section 200 of the Labor Law [citations omitted]" (*Lombardi v Stout*, 80 NY2d 290, 295 [1992]). Similarly, where the dangerous condition arises from a subcontractor's methods or materials, "recovery against the * * * general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation [citations omitted]." (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]; *see also Loiacono v Lehrer McGovern Bovis*, 270 AD2d 464, 465 [2000].)

Applying these principles to the present case, it is clear that the negligence and section 200 claims against the owner Newireen must be dismissed. In the proceedings before the motion court, Newireen submitted an affidavit stating that it never directed or controlled the means or methods of the work performed by any of the contractors and it did not instruct any of the contractors or their employees to use the stairs in connection with their tasks. Plaintiff submitted no evidence to contradict these assertions. Accordingly, plaintiff has failed to raise an issue of fact as to Newireen's supervision or control, and the negligence and section 200 claims are dismissed as against it.

LMB, as the construction manager with supervisory authority over the entire project, presents a slightly more difficult question. In support of its motion, LMB submitted an affidavit of its assistant superintendent averring that LMB "did not direct the means and methods or give instructions to employees of Centrifugal as to how to perform their work" and "did

not instruct or direct any employee of Centrifugal to either walk up a staircase or to carry tools, materials and/or supplies by using a staircase."

Most significantly, undisputed evidence showed that it was Reilly's deputy foreman, George Stewart, another Centrifugal employee, who directed Reilly to continue raising the pipes up the shaft by using the stairs after the 61st Street hoist had become inoperable. By this evidence, LMB met its burden of demonstrating that it did not supervise or control the work activity that gave rise to the injury and the burden shifted to plaintiff to raise an issue of fact with respect to LMB's liability.

In opposition, plaintiff submitted her attorney's affirmation alleging that LMB was the construction manager at the work site, that LMB was responsible for notifying Universal in the event of problems with the hoist and that there were frequent complaints by workers at the site concerning the fact that the hoist kept breaking down. Plaintiff attached as exhibits deposition excerpts of two LMB employees, one of whom testified that the 61st Street hoist broke down "periodically," and another who stated that it malfunctioned "twice a week."[2]

Significantly, however, plaintiff submitted no evidence contradicting LMB's assertion that it did not exercise supervision or control over the work activity being performed by Reilly. On the contrary, plaintiff's attorney conceded that it was Reilly's supervisor from Centrifugal who "directed the workers to continue and complete the raising, welding and installing of the pipes."

There is other evidence in the record, not cited by plaintiff, concerning the nature and extent of LMB's duties. LMB's assistant superintendent testified at deposition that it was his duty to supervise "the trades that were responsible for building the facade and the core and shell of the building," that he would hold weekly meetings with the foreman and that he "coordinated the whole trade and sequencing and tasks and activities with the trades so we could build a building to its finished product." The superintendent further testified that if there were a problem with the hoists, he or another LMB superintendent would be notified and it was their responsibility to call Universal to have someone complete the necessary repairs. He also testified that LMB had the authority to stop work at the site if an unsafe condition existed.

---

2. Plaintiff also attached unsigned transcripts of interviews with the two LMB employees describing frequent problems with the 61st Street hoist. As these unsigned transcripts do not constitute evidence in admissible form under CPLR 3212, and no excuse was provided for failing to provide them in proper form, they will be given no consideration by this Court.

Although this evidence presents a close question as to the extent of LMB's supervision and control over the work site (*see generally Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352-353 [1998]), we are ultimately persuaded by the undisputed fact that the methods of Reilly's work were determined exclusively by a Centrifugal employee, as was the decision to continue the work after the hoist became inoperable (*see Kocurek v Home Depot, U.S.A.P.*, 286 AD2d 577, 580 [2001] [contractor and subcontractor not liable where plaintiff's employer, another subcontractor, had sole authority to control and supervise plaintiff's work]; *Loiacono v Lehrer McGovern Bovis*, 270 AD2d 464, 465 [2000] [construction manager not liable under Labor Law § 200 where plaintiff testified it was he who determined how his work was to be done]).

Nor can it be inferred solely from LMB's contractual duties alone that LMB had the requisite supervision and control. Plaintiffs' reliance upon LMB's general supervisory duties is misplaced, as such duties, in the absence of actual authority to control the activity bringing about the injury, will not suffice to hold a general contractor liable (*see Loiacono v Lehrer McGovern Bovis*, 270 AD2d 464, 465 [2000] [no evidence that LMB controlled the manner in which plaintiff carried out his task; although LMB coordinated contractors, told them where to work and had authority to review safety on the site, this conduct did not rise to level of supervision and control to hold it liable]; *Soshinsky v Cornell Univ.*, 268 AD2d 947 [2000] [general contractor's retention of general supervisory control, presence at the work site or authority to enforce general safety standards insufficient to establish necessary control]; *see also Singleton v Citnalta Constr. Corp.*, 291 AD2d 393, 394 [2002]).

Accordingly, since LMB's affidavit and the established facts demonstrate that LMB exercised no control over the manner in which Reilly's work was being performed, it cannot be liable for a subcontractor's negligent methods (*see Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]; *Lombardi v Stout*, 80 NY2d 290, 295 [1992]; *Soshinsky v Cornell Univ.*, 268 AD2d 947, 947-948 [2000]; *Lillis v City of New York*, 226 AD2d 592, 593 [1996], *lv denied* 89 NY2d 810 [1997]).

*Rizzuto v L.A. Wenger Contr. Co.* (91 NY2d 343 [1998]), cited by plaintiff, is inapposite. In *Rizzuto*, there was no evidence that a subcontractor-employer specifically controlled the method of the work giving rise to plaintiff's injuries, as was the case here. Furthermore, there was evidence in *Rizzuto* that the general contractor had the specific authority to exclude workers from an area in the work site to avoid conflicts with other

trades, and to direct one group to cease operations while another potentially hazardous job was being performed in the immediate area—conduct which, if exercised, would have alleviated the risk of injury. Plaintiff herein submitted no evidence that LMB's general supervisory authority would have supplanted Centrifugal's determination to continue the work without an operable hoist.

Universal argues that plaintiff's negligence and Labor Law § 200 claims should have been dismissed as against it because it did not supervise or control the methods of Reilly's work and because there is no evidence in the record from which it may be inferred that Universal was negligent in the maintenance or repair of the 61st Street hoist. The IAS court rejected both arguments.

The IAS court's holding that an issue of fact exists as to whether Universal supervised or controlled Reilly's work was error. While Universal clearly assumed a contractual duty to install, maintain and repair the hoists at the work site, which were used by Reilly and his coworkers, this duty is not the equivalent of supervision and control over the work being performed by Reilly. The record shows that Universal performed its contractual duties by installing, periodically testing and being available to repair the hoists when notified by LMB of a problem. Thus, in the present case, when LMB notified Universal that the 61st Street hoist had shut down, Universal's duty was to promptly send someone to the site to fix it. There is no evidence that Universal failed in this duty on the date of Reilly's death, or at any other time.

The record is equally clear that Universal had no authority, contractual or otherwise, to supervise or control Reilly's work while the hoist was undergoing repairs. As noted, the record shows that such authority was exercised solely by Reilly's supervisor, a Centrifugal employee, who decided to have Reilly and others continue raising the pipes by using the stairs. Thus, even if the hoist was inoperable for more than a full day, as plaintiff contends, Universal cannot be liable for Reilly's injuries where the dangerous condition arose from the unsafe manner in which the work was being performed by another subcontractor, and Universal exercised no supervisory control over that work (see Comes v New York State Elec. & Gas Corp., 82 NY2d at 877-878). That Universal's repairman was not on-site and had to be summoned by the LMB supervisor only reinforces the conclusion that Universal lacked supervisory control over Reilly's work (see Kocurek v Home Depot, U.S.A.P., 286 AD2d at 580).

The IAS court found an issue of fact as to whether Universal had actual or constructive notice of the defective hoist for such a period of time that in the exercise of reasonable care it should have corrected it. There is conflicting evidence concerning the cause and duration of the malfunctioning hoist. Universal's "hoist service log" indicates that, on the date in question, a call was made by the LMB superintendent to Universal at approximately 12:00 P.M., reporting that the 61st Street hoist "ran limits." Universal's president, Kevin O'Callaghan, testified at deposition that a hoist can run limits due to many things, including operator error, overloading, excessive speed or a problem with how the limits were set. O'Callaghan further testified that according to the hoist service log, it appears that the hoist was repaired by a Universal repairman by 1:00 P.M., one hour after the call was received.

In opposition, plaintiff offered the deposition testimony of two LMB employees stating that the 61st Street hoist broke down "periodically" or "twice a week"; that the causes of some of the prior breakdowns of the hoist were blown hydraulic lines, misaligned safety switches and the replacement of a motor; that the duration of time for repairing the hoist was generally between one hour and 1½ days; and that workers at the site had complained to LMB prior to Reilly's death that they had to use the stairs because the hoist kept breaking down. One of LMB's employees also testified, in contradiction to the notations in the hoist service log, that the 61st Street hoist was inoperable from 10:30 A.M. on the date of Reilly's death to approximately 10:00 A.M. the next morning.

Notwithstanding this conflicting evidence, we conclude that plaintiff has failed to raise an issue of fact as to whether Universal failed to remedy a dangerous condition of which it had notice. In the first instance, it is arguable whether an inoperable hoist, by itself, should be considered a dangerous condition. It could just as reasonably be argued that the dangerous condition in this case arose solely by virtue of the determination by Reilly's employer to continue the strenuous work by using the stairs. However, even assuming an inoperable hoist may constitute a dangerous condition, the record discloses that Universal was notified of the problem by 12:00 P.M. and promptly responded within one hour.

To the extent the deposition testimony of the LMB employees suggests a recurring problem with the hoists, we find such testimony to be too vague and unspecific to state a viable claim for negligent maintenance against Universal. At best, the evidence demonstrates periodic breakdowns with the 61st Street

hoist, caused by a variety of different things, and that the workers complained about having to use the stairs when the hoist was inoperable. No expert affidavit or other evidence was submitted to establish a nexus between the hoist breakdowns and any specific negligent act or omission by Universal. Nor was there any evidence showing that a one-day period for repairing the hoist would constitute a failure to exercise reasonable care. In short, plaintiff was required to produce evidence in admissible form that would raise an issue of fact as to Universal's negligent maintenance or repair of the hoist—yet, plaintiff has failed to identify even a single act of negligence on the part of Universal (*see Rodriguez v Serge Els. Co.*, 291 AD2d 390, 391 [2002], *revd on other grounds* 99 NY2d 587 [2003] [elevator maintenance company entitled to summary judgment where plaintiff failed to establish any specific acts of negligence on its part]). Accordingly, Universal's motion for summary judgment is granted.

Newireen/LMB's Indemnification Claim against Centrifugal

Centrifugal argues that the IAS court erred in granting Newireen/LMB's motion for summary judgment for indemnification of legal costs since the indemnification clause in the parties' contract violated General Obligations Law § 5-322.1 in that it contemplated the indemnification of Newireen/LMB for their own negligence. This argument is premised on the IAS court's holding that an issue of fact exists as to Newireen/LMB's liability. However, as we have reversed that portion of the court's holding and held that neither Newireen nor LMB is liable under section 200 or the common law, that premise no longer exists. Accordingly, since the indemnification clause at issue is not being invoked to indemnify Newireen/LMB for their own negligence, and the record demonstrates that the loss here arose of out Centrifugal's work, as the indemnification provision requires, summary judgment was properly granted for legal costs (*see Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 786, 795 n 5 [1997]; *Gonzalez v Old Navy Clothing Co.*, 286 AD2d 308 [2001]; *cf., Amato v Rock-McGraw, Inc.*, 297 AD2d 217, 219 [2002]). Concur—Buckley, P.J., Andrias, Rosenberger, Wallach and Gonzalez, JJ.

