Defendant 46th Street Development LLC (owner) hired Plaza to manage the construction of a 42-story residential building owned by the former. Plaza hired Five Star as the electrical subcontractor. Pursuant to the contract between Plaza and the owner, Plaza was solely responsible for “coordinating the construction of all portions of the work,” and had broad and specific responsibilities relating to site safety. Indeed, Plaza hired an outside safety coordinator, Total Safety Consulting, to ensure that all proper safety precautions were taken on the site. The contract between Plaza and Five Star contained an indemnification and hold harmless clause, which provided that Five Star would indemnify and hold Plaza harmless for damages which “ar[i]se out of or are connected with or . . . claimed to arise out of or be connected with . . . performance of [w]ork by [Five Star].”
Plaintiff Enrique Sosa was an employee of nonparty Port Morris Tile Corporation, the tile contractor. He alleges that at about 7:15 a.m. on December 13, 2007, while engaged in tiling work in a bathroom in an apartment on the 10th floor, he sustained *491 injuries from an electric shock after coming into contact with an exposed, hanging electric wire. When the accident occurred, Con Edison was already in the process of transforming the power supply in the building from “temporary” to “permanent.” The temporary supply was made available to contractors while the superstructure of the building was being erected. Robert Marrone, who was Plaza’s superintendent at the project in the year leading up to the accident, testified that power was gradually switched to permanent as the building rose and individual apartments became ready to be finished. However, even after sections of the building went to permanent power supply, that power would remain off unless a contractor specifically requested that power be supplied to the apartments. To connect the power in those apartments, Five Star was required to activate breakers at central panels which controlled power to three floors. It also had to activate breakers in the individual apartments where the requesting contractor desired to work. Plaza generally coordinated with Five Star when individual contractors needed power in an apartment.
A few days before the accident in question, Port Morris requested that the permanent power supply in the apartments be activated in two specific areas, including at the outlets providing electricity for washing machines. Port Morris planned to plug tile-cutting saws into those outlets. Five Star accommodated the request by activating breakers at the central panels and at the necessary areas in the apartments. It also went to each individual apartment to “safe off” the relevant outlets, which involved insulating the wires at those outlets to prevent the workers from sustaining electrical shocks. Chris Cote, Five Star’s foreman, testified at his deposition that on the night before the accident he saw workers from contractors other than Port Morris working in apartments and using permanent electricity. The only way these workers could have accessed the electricity was to activate breakers in those apartments. However, these workers were not permitted to do so without direct authorization from Five Star. Cote reported what he saw to Plaza. This was not the first time that Cote noticed other contractors circumventing Five Star to draw more power for their work. In fact, he testified, it happened more frequently in the beginning stages of the project. The subject incident occurred toward the end of the project.
Two of Five Star’s workers gave testimony that was consistent with Cote’s to the extent they stated that it was not unheard of for other contractors, after the permanent power supply had been activated, to energize electric power in individ *492 ual apartments without Five Star’s knowledge or permission. One of the workers, Ralph Lopez, testified that from the time the permanent power supply was activated at the site, he was aware of incidents where other trades would activate breakers inside apartments without Five Star’s knowledge. Bridgette Kennedy, who had been working at the job for a few weeks before the accident, testified that the problem occurred on a daily basis. She further averred that the problem was not uncommon in the industry. Finally, Kennedy testified that the issue was discussed at safety meetings run by Plaza through its contractor, Total Safety Consulting.
Plaza’s superintendent on the project, William Rogers, testified that it was “possible” that there was a problem during the construction of the building with contractors activating electricity in apartments without proper authorization. He further testified that it was “possible” that the issue came up during safety meetings.
Plaza cross-claimed against Five Star for, inter alia, contractual indemnification. It then moved for conditional summary judgment on that claim. Conceding that any evidence of active negligence on its part would render the indemnification clause unenforceable, Plaza argued that “[t]he fact that a construction manager runs safety meetings, inspects the site, supervises and coordinates the work of the trades etc. is not the basis for a claim of active negligence.”
In opposition, Five Star did not contest that the indemnification provision covered the subject accident. However, relying on testimony from Five Star’s witnesses that there was a problem at the construction site with unauthorized activation of permanent power, it asserted that, pursuant to General Obligations Law § 5-322.1, an issue of fact existed regarding enforceability of the indemnification provision.
In a ruling from the bench, the court denied the motion. It stated that “to the extent that Plaza was coordinating the different trades within the unit, whether or not there was knowledge of them turning the circuit breakers on is a question of fact. One of [Five] Star’s workers says they kept finding the circuit breakers switched on when they should have been switched off, and this is a question for the jury.”
As trite as such recitations have become, this is a case that deserves a brief reiteration of the by now well-settled constraints imposed on any court considering a summary judgment motion. “On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party. Summary judgment is a drastic remedy, to be granted only where the *493 moving party has tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact and then only if, upon the moving party’s meeting of this burden, the non-moving party fails to establish the existence of material issues of fact which require a trial of the action” (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [citations and internal quotation marks omitted]). Courts may not resolve summary judgment motions by making credibility determinations, as those are exclusively within the province of the trier of fact (see Sanchez v Finke, 288 AD2d 122, 123 [1st Dept 2001]).
Applying these principles, the burden was on Plaza to demonstrate, beyond a material issue of fact, that it bore no responsibility for plaintiffs accident. Because this was an accident on a construction site, it had to show that it did not exercise any authority over the means and methods of plaintiffs work, or that, to the extent the accident arose out of a dangerous condition on the premises, it was not liable for the condition (see Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 148 [1st Dept 2012]). It does not appear to be in dispute that this accident falls into the latter category. Thus, Plaza was required to establish that it did not create the condition or have actual or constructive notice of its existence prior to the accident in sufficient time to take corrective measures (see Mitchell v New York Univ., 12 AD3d 200, 201 [1st Dept 2004]).
It appears from the testimony, especially that of Lopez and Kennedy, that there was some history during the project of contractors activating the electricity in individual apartments without having first received the proper authorization. Further, and significantly, Kennedy testified that the issue came up at safety meetings run by Plaza. This suggests that Plaza was concerned about the practice and considered it a possible threat to the safety of workers such as plaintiff No one from Plaza refuted the testimony of Lopez and Kennedy. To the contrary, its superintendent Rogers stated that it was “possible” that this occurred. Under these circumstances, and giving every benefit of the doubt to Five Star as the non-moving party, we find that an issue of fact exists as to whether Plaza had the requisite notice of a dangerous condition in sufficient time to do something about it. Accordingly, summary judgment was properly denied (see Barraco v First Lenox Terrace Assoc., 25 AD3d 427, 429 [1st Dept 2006]).
In opining that there are no issues of fact whether Plaza was negligent, the dissent misapprehends the record. First, it states that Cote “testified that there was no ongoing problem with other subcontractors turning on electrical power before the *494 plaintiffs accident.” In fact, however, Cote testified that, even in the early stages of construction, contractors were “trying to bypass Five Star Electric to get more power for their work.” Including Lopez and Kennnedy, the two other Five Star workers who testified, there were three witnesses who consistently testified that in the weeks prior to the accident, there was an issue with unauthorized activations of electricity.
The dissent further reads the record incorrectly when it states that Kennedy “could not remember when she worked at the project.” At first she could not, when she was asked to describe in absolute terms her time energizing outlets in individual apartments. However, when asked to state the period of time in terms of weeks or months, she answered, “Probably a couple of weeks.” Again, this Court is not permitted to make credibility determinations and as such this testimony cannot be rejected out of hand. Further, contrary to the dissent’s comment that Lopez could not say when contractors accessed electricity “with reference to the plaintiffs accident,” Lopez’s testimony that the problem existed was in response to a question asking if it happened “[f]rom the time the power was provided to the apartment panels and was permanent.” Because Marrone testified that power was switched gradually from temporary to permanent, beginning on the lowest floors and proceeding to the higher floors, and the accident occurred on the 10th floor, an inference can be drawn that Lopez was describing a problem which began some time before the accident.
Finally, the dissent ignores Kennedy’s testimony that the issue of other contractors activating electricity in individual apartments was discussed at Plaza’s safety meetings. If we assume this to be true, as we must, it would evince specific awareness of the problem and an acknowledgment by Plaza that it considered it to be a significant safety concern. Accordingly, the cases cited by the dissent where the defendant only had a general awareness of a dangerous condition are completely inapposite.
Five Star has pointed to concrete evidence in the record to suggest that Plaza had notice of a dangerous condition on the construction site in sufficient time to remedy it. Accordingly, because a material issue of fact exists whether Plaza’s negligence voids Five Star’s contractual obligation to indemnify Plaza against plaintiffs claims, the motion court properly denied Plaza summary judgment on its cross claim against Five Star. Concur — Mazzarelli, J.P., Moskowitz, Manzanet-Daniels and Román, JJ.