Catterson, J.,
dissents in a memorandum as follows: I must *495 respectfully dissent. In my opinion, codefendant subcontractor Five Star Electrical Corp. (hereinafter referred to as Five Star) fails to raise an issue of fact as to whether defendant Plaza Construction Corp. was actively negligent in bringing about the plaintiffs injury which was caused by a live, exposed wire while he was tiling a bathroom. Five Star contends, inter alia, that general contractor Plaza had constructive notice of a dangerous condition at the building site where other trades were allegedly turning on electrical power without authorization. In my view, the testimony upon which Five Star relies simply does not support its contention.
As set forth in greater detail below, at best the testimony of two Five Star electricians and its foreman establishes only that Plaza may have had a general awareness of a potentially hazardous condition, which precedent deems is an insufficient basis for constructive notice. Moreover, the testimony of the Five Star foreman as to a telephone call he made to Plaza regarding a situation where other tradesmen had turned on circuit breakers in some apartments also fails to raise an issue of fact as to notice. Given the timing of the call on the night before the plaintiffs accident, there is no evidence of record that Plaza could have taken any concrete steps to remedy the situation before the plaintiffs accident at 7:15 a.m. the following morning. Therefore, in my view, Plaza is entitled to contractual indemnification from Five Star, and I would grant its motion for summary judgment.
Defendant 46th Street Development LLC hired Plaza to manage the construction of a 42-story residential building. Plaza’s contractual responsibility included “coordinating the construction of all portions of the work” among the trade subcontractors at the site. Plaza hired Five Star for the electrical work and nonparty Port Morris Tile Corp. for the tile work. The plaintiff, an employee of Port Morris Tile, alleges that at about 7:15 a.m. on December 13, 2007, he sustained injuries from an electric shock after touching an exposed, live electric wire while tiling a bathroom in one of the apartments in the building.
The plaintiff brought this action against, inter alia, Plaza and Five Star alleging violations of Labor Law §§ 200, 240 and 241. Plaza cross-claimed against Five Star for contractual indemnification based on a very broad indemnification and “hold harmless” provision, which stated that Five Star would indemnify and hold Plaza harmless for damages that “arise out of or are connected with . . . performance of [w]ork by the subcontractor.”
At the conclusion of discovery, Plaza moved for summary judg *496 ment on its indemnity claim against Five Star on the ground that the plaintiffs accident arose out of Five Star’s work. Plaza argued that the plaintiff was injured after he touched live electrical wires that the plaintiff claimed were not taped or capped to prevent shocks. Plaza contended that the broad indemnity clause applied whether Five Star was negligent or not.
Five Star did not dispute that the plaintiffs accident arose out of or was connected to Five Star’s electrical work. Rather, Five Star argued that General Obligations Law § 5-322.1 precludes full contractual indemnification on the ground that Plaza was actively negligent. Specifically, Five Star contended that there was evidence that Plaza had notice that other subcontractors were improperly turning on circuit breakers and that Plaza failed to “coordinate the trades” at the project. The motion court agreed and denied Plaza’s motion.
The majority affirms, finding that there is “concrete evidence in the record to suggest that Plaza had notice of a dangerous condition on the construction site in sufficient time to remedy it.” For the reasons set forth below, I disagree. General Obligations Law § 5-322.1 (1) states that “[an] . . . agreement ... in connection with ... a contract or agreement relative to the construction ... of a building . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons . . . caused by or resulting from the negligence of the promisee . . . , whether such negligence be in whole or in part, is against public policy and is void and unenforceable.” Thus, a subcontractor seeking to avoid enforcement of an indemnity agreement has the burden of proving that the indemnitee general contractor was negligent to “some degree.” (Brown v Two Exch. Plaza Partners, 146 AD2d 129, 137 [1st Dept 1989], affd 76 NY2d 172 [1990].) Conversely, summary judgment may be granted to a contractor on its contractual indemnity claim against a subcontractor when there is no possibility that the contractor will be found actively negligent. (See Warnett v A.J. Pegno Constr Corp., 1 AD3d 207 [1st Dept 2003]; see also Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co., 89 NY2d 786 [1997] [absent a finding of negligence on an indemnitee’s behalf, an indemnity agreement would not run afoul of General Obligations Law § 5-322.1].)
A general contractor may be held liable for negligence when it has actual or constructive notice of a dangerous condition and fails to take corrective action. (See Mitchell v New York Univ., 12 AD3d 200, 200-201 [1st Dept 2004].) A defendant has constructive notice of a hazardous condition when a defect is *497 visible and apparent and exists for a sufficient length of time prior to the accident to permit the defendant’s employees to discover and remedy it. (Gordon v American Museum of Natural History, 67 NY2d 836, 837-838 [1986].)
Here, Five Star contends that Plaza was negligent because it failed to “keep the hands of the other trades out of the electricians’ work.” Five Star further contends that Plaza had constructive notice of this “recurring hazardous condition,” and failed to address it in a timely and reasonable manner. In support of this argument, Five Star relies primarily on the testimony of two electricians who were responsible for capping or taping the wires as well as the testimony of its foreman.
Five Star’s general foreman testified that two or three days before the plaintiffs accident, he was asked to “energize” or provide permanent power to apartments on the first 11 floors of the building. He directed two electricians to put wire nuts or tape on the wires and turn on the power to the apartments. He instructed them to then turn on the circuit breakers for “the washer unit so the tile guy would have power to the washer outlet and operate his saw, and the lighting circuit, so they had light to perform their work.” All other circuit breakers, including those in the bathrooms, were to be left off.
The foreman further testified that there was no ongoing problem with other subcontractors turning on electrical power before the plaintiffs accident. However, he acknowledged that on the night before the accident, he observed that some workers in some of the apartments had turned on electrical circuits without permission. He testified that he told those workers they could not do so, and that he reported the incident to Plaza. However, he did not identify the workers or the apartments.
The two electricians testified that they capped and taped the wires and activated the two circuits in each apartment as instructed. Both of them also testified as to seeing other tradesmen improperly turning on electrical power in certain apartments. However, neither electrician could identify the location of the apartments.
One electrician testified that she saw “other trades touching electrical breakers . . . [a]lmost every day . . . from the time [she] started.” However, she could not remember when she worked at the project. The second electrician testified that some of the trades went into the panel to turn breakers on “once in a while.” However, he could not say when this occurred with reference to the plaintiffs accident. Hence the testimony of the first electrician is inconsistent with that of the second, and the testimony of both electricians is inconsistent with that of the Five Star foreman.
*498 More significantly, the vagueness of the testimony precludes any conclusion that a triable issue of fact exists as to Plaza’s constructive notice. At best, the testimony imputes to Plaza only a general awareness of a potentially dangerous condition and it is well settled that a “general awareness” that a dangerous condition may be present is legally insufficient to constitute constructive notice of the particular condition that caused a plaintiffs accident. (Piacquadio v Recine Realty Corp., 84 NY2d 967, 969 [1994].) Thus, vague testimony, which cannot establish the length of time a hazardous condition has existed, is insufficient to raise a triable issue of fact as to constructive notice. (See e.g. Kobiashvilli v Hill, 34 AD3d 747, 747-748 [2d Dept 2006] [“appellant established its entitlement to judgment as a matter of law by submitting proof that the length of time for which the (defect) existed was unknown” (internal quotation marks omitted)]; Reilly v Newireen Assoc., 303 AD2d 214, 223 [1st Dept 2003], lv denied 100 NY2d 508 [2003] [testimony that a hoist broke down “periodically” or “twice a week” was too vague and unspecific to state a viable claim for negligent maintenance].)
Nor, in my view, does Five Star raise an issue of fact as to notice by relying on its foreman’s testimony as to his phone call to Plaza on the night before the accident. Actual notice “must call attention to the specific defect or hazardous condition and its specific location, sufficient for corrective action to be taken.'” (Mitchell, 12 AD3d at 201 [emphasis added].) Here, the foreman could not identify the workers who allegedly were turning on electrical power without authorization; nor could he identify the apartments, or the floors on which they were located.
Even assuming arguendo that the foreman’s telephone call was sufficiently specific to provide Plaza with actual notice, there is no evidence that there was time for Plaza to take any concrete steps to remedy the hazardous condition. The only evidence concerning a remedy was testimony that after the accident locks were installed on each apartment’s electric panel to ensure that only Five Star would have access to the circuit breakers. Not only did Five Star’s foreman admit that this was not the standard practice in the industry, but Plaza, who was allegedly notified the night before the plaintiffs accident, could not have had time to have locks installed on every apartment panel in the 42-story building when work began at 7 o’clock the following morning and the plaintiff was injured at 7:15 a.m.