OPINION OF THE COURT
Wesley, J.
These appeals pose a question left unanswered in Brown v Two Exch. Plaza Partners (76 NY2d 172): whether, and to what extent, an indemnification agreement between a general contractor and subcontractor can be enforced where the general contractor has been found partially negligent in an action brought by an employee of the subcontractor against the gen *790 eral. We hold that, because the agreements in question contemplate full, rather than partial, indemnification, the agreements are unenforceable under General Obligations Law § 5-322.1 in the circumstances of these cases.
I.

Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.

Plaintiff Itri Brick & Concrete Corp. was a masonry subcontractor on a construction project at Queens College. The general contractor on the job was a joint venture consisting of Mars Associates, Normel Construction Corp., and West Terrace Construction Corp. (MNT). Kizmann, an employee of Itri, was injured on the job, and sued MNT under theories of common-law negligence and Labor Law §§ 240 and 241. MNT in turn impleaded Itri, asserting claims for common-law indemnification and contribution, as well as contractual indemnification.[1]
Itri made a demand to defend and indemnify upon its two insurers: the State Insurance Fund, Itri’s workers’ compensation carrier, which provided coverage for common-law indemnification and contribution claims, and Aetna, which had issued Itri a commercial general liability policy. Aetna responded that its policy did not cover the common-law claims, and that, while the policy did generally cover liability assumed by Itri under a contract or agreement, MNT’s claim for contractual indemnification would be barred under General Obligations Law § 5-322.1 if Kizmann’s injuries resulted in part from the negligence of MNT.[2]
While the personal injury action was pending, Itri and the State Fund commenced this declaratory judgment action against Aetna demanding that Aetna partially defend and *791 indemnify Itri. Upon a motion by Itri and the State Fund for summary judgment, Supreme Court denied the motion, searched the record and granted judgment in Aetna’s favor. The court determined that the indemnification agreement was void under General Obligations Law § 5-322.1, and that MNT’s claim for contractual indemnification against Itri was not covered by the Aetna policy. Two months later, the personal injury action settled. Shortly thereafter, Aetna and the State Fund entered into a stipulation: (1) that approved the settlement amount paid by State Fund on behalf of Itri in the personal injury action; (2) that specifically reserved the State Fund’s right to seek to reargue Itri’s coverage claim in the declaratory judgment action; and (3) that determined that MNT was 24.26% negligent, and Itri was 75.24% negligent.
Thereafter, Itri and the State Fund moved to renew and to reargue the summary judgment motion. Supreme Court denied the motion to reargue, granted the motion to renew and adhered to its previous decision, again holding that since MNT had been found partially negligent, the indemnification agreement between MNT and Itri was unenforceable under General Obligations Law § 5-322.1. Itri and the State Fund appealed. The Appellate Division unanimously affirmed, holding that, because the stipulation determined that MNT was partially negligent, the indemnification agreement was invalid under General Obligations Law § 5-322.1 and therefore there was no coverage under the applicable provision of the Aetna policy. Leave to appeal to this Court was granted by the Appellate Division.

Stottlar v Ginsburg Dev. Corp.

Plaintiff Stottlar was an employee of W.C. Shopovick & Co., Inc., a carpentry subcontractor on a construction project on which defendant Ginsburg Development Corporation was the general contractor. Stottlar fell from a plank and was injured while on the job. He then sued Ginsburg under theories of common-law negligence and Labor Law §§ 200 and 240. Ginsburg in turn impleaded Shopovick, asserting claims for common-law contribution and indemnification, as well as contractual indemnification.[3]
*792 Shopovick made a demand for defense and indemnification from its two insurers — the State Insurance Fund, Shopovick’s workers’ compensation insurer, and CNA Insurance Company, Shopovick’s insurer under a commercial general liability policy.* **[4] CNA agreed to defend Shopovick, but reserved its right to disclaim coverage on Ginsburg’s contractual indemnification claim if Ginsburg was found negligent.
At trial on the issue of liability only, the court dismissed the Labor Law § 241 (6) claim. Plaintiffs remaining causes of action were submitted to the jury. The jury determined that Ginsburg’s violation of Labor Law § 240 (1) was not a proximate cause of plaintiffs injuries. The jury returned a verdict for plaintiff on the negligence and Labor Law § 200 causes of action and determined that Shopovick was 50% negligent, Ginsburg was 35% negligent, and Stottlar was 15% negligent. Prior to a trial on plaintiff’s damages, Shopovick commenced a fourth-party action against CNA and the State Fund seeking a declaratory judgment to determine the carriers’ responsibilities under their respective policies with Shopovick. The personal injury case was ultimately settled and CNA reserved its right to seek a judicial determination of its duty to indemnify Shopovick in the fourth-party action.
CNA and the State Fund submitted an agreed statement of facts for a stipulated controversy to Supreme Court. That court held that the indemnification agreement between Ginsburg and Shopovick was unenforceable under General Obligations Law § 5-322.1, because of the jury’s apportionment of negligence to include Ginsburg. Thus, since the agreement was invalid, CNA was not liable under the provisions of its policy to indemnify Shopovick on Ginsburg’s contractual indemnification claim.
The Appellate Division reversed. Noting that General Obligations Law § 5-322.1 was intended only to preclude a contractor *793 (Ginsburg) from seeking contractual indemnification for damages caused by the negligence of the contractor, the court went on to hold that CNA was "required to honor its contractual obligation to the extent that the [indemnification] contract requires indemnification caused by or resulting from the negligence of a party other than” Ginsburg (Stottlar v Ginsburg Dev. Corp., 229 AD2d 483, 485). The Appellate Division concluded that the contractual indemnification clause remained in effect and rendered CNA and the State Fund coinsurers. We granted CNA leave to appeal.
II.
Both agreements are drawn in extremely broad terms. The Itri/MNT agreement states that Itri "shall hold the first party [MNT] harmless from all liability * * * from claims for injuries or death from any cause while on or near the project * * * whether or not it is contended the first party contributed thereto in whole or in part” (emphasis added). The agreement imposes an indemnification obligation on Itri merely upon a determination that the claim arose from activity "while on or near the project” without regard to whether Itri or its employees were a cause of the injury and notwithstanding culpability by MNT in whole or in part.
The Ginsburg /Shopovick agreement states that Ginsburg "shall be indemnified and held harmless from any and all liability; action or claims (just or unjust), and from any and all resulting damages, expenses, costs or fees * * * made by any person * * * in connection with or resulting from the work or by reason of the operations performed on behalf of, or on the property of ginsburg development corp. by the named insured Subcontractor, his agents, servants or employees” (emphasis added). This agreement closely -parallels the language of the indemnification agreement at issue in Brown v Two Exch. Plaza Partners (supra, 76 NY2d, at 177, n 3). The agreement requires Shopovick to indemnify Ginsburg for all claims that arise "from the work”, without regard to who or what caused the injury.
The agreements here contemplate a complete rather than partial shifting of liability from the general contractor to the subcontractor. They were obviously intended to broaden the liability of the respective subcontractors, by providing for indemnification from claims for injuries; (a) "from any cause while on or near the project” (Itri), or (b) "in connection with or resulting from the work” (Stottlar) (see, Brown v Two Exch. *794 Plaza Partners, supra, 76 NY2d, at 178). Both impose an indemnification obligation on the subcontractors without limitation in terms of the negligence of the general contractor/ owner. Indeed, in Itri, the agreement provides that the subcontractor must indemnify the general even if the general causes the injury in whole or in part.
The language, purpose and history of General Obligations Law § 5-322.1 support our determination that the agreements in both appeals are unenforceable since their full enforcement would result in the contractors being indemnified for their negligence. That statute provides that:
"[a] covenant, promise, agreement or understanding in, or in connection with * * * a contract or agreement relative to the construction, alteration, repair or maintenance of a building * * * purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable.” (General Obligations Law § 5-322.1 [1].)
The purpose of this provision was to prevent a prevalent practice in the construction industry of requiring subcontractors to assume liability by contract for the negligence of others. The Legislature concluded that such "coercive” bidding requirements unnecessarily increased the cost of construction by limiting the number of contractors able to obtain the necessary hold harmless insurance, and unfairly imposed liability on subcontractors for the negligence of others over whom they had no control. The agreements also needlessly created expensive double coverage for hold harmless or general liability insurance (see, Brown v Two Exch. Plaza Partners, supra, 76 NY2d, at 179-180, citing Mem of Assemblyman Brown, 1975 NY Legis Ann, at 311; see also, Quain v Buzzetta Constr. Corp., 69 NY2d 376, 380).
This Court’s prior involvement with this statute further supports the result we reach today. In Quevedo v City of New York (56 NY2d 150), we held that because the statute as originally enacted prohibited indemnification agreements where the negligence of the general contractor was the sole cause of the injury, nothing prohibited indemnification agreements in cases *795 of joint fault (56 NY2d, at 156). We noted in Brown that the Legislature amended the statute in 1981 "to prohibit indemnity agreements in which owners or contractors sought to pass along the risks for their own negligent actions to other contractors or subcontractors, even if the accident was caused only in part by the owner’s or contractor’s negligence” (Brown v Two Exch. Plaza Partners, supra, 76 NY2d, at 180, citing Mem of Assemblyman Goldstein in support of proposed amendment, 1981 NY Legis Ann, at 502). By prohibiting indemnification agreements where the negligence of the general/owner caused the injury "in whole or in part”, the Legislature clearly signalled its intention to cover the agreements that are before us.
Both Itri and Shopovick also contend that section 5-322.1 does not bar enforcement of these agreements altogether, but merely bars enforcement of the contract claims to the extent that they would require indemnification for that portion of the awards attributable to the negligence of the general contractors. The statute provides that an agreement "purporting to indemnify or hold harmless the promisee against liability for damage * * * caused by or resulting from the negligence of the promisee * * * is against public policy and is void and unenforceable” (General Obligations Law § 5-322.1 [1]). As we noted earlier, the agreements contemplate full indemnification, even in cases where the general contractor is found to be negligent, and contain no language limiting the subcontractor’s obligation to that permitted by law or to the subcontractor’s negligence. Section 5-322.1 makes no attempt to salvage that part of an indemnification contract that would require a subcontractor to indemnify a general for the subcontractor’s negligence only. We conclude that the statute applies to the indemnification agreements in their entirety where, as here, the general contractor /promisee is actually found to have been negligent.[5]
We also reject the State Fund’s argument that partial enforcement of contractual indemnification agreements under these circumstances is specifically contemplated by the second sentence of section 5-322.1 (1), which at the time of these actions, provided that:
*796 "[t]his subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisee is partially negligent.”
This portion of the statute was intended to allow indemnification agreements where the subcontractor, although not negligent, agrees to indemnify the general for the negligence of third parties. In 1993, the section was amended and "promisor” was substituted for the final "promisee” in this last sentence. An amendment to a statute may be used to divine the legislative intent with regard to the original law (Matter of Honeoye Cent. School Dist. v Berle, 72 AD2d 25, affd 51 NY2d 970). The legislative history indicates that this amendment corrected what the Legislature considered a mere typographical error in the former statute (see, Mem of Assemblyman Lasher, 1993 NY Legis Ann, at 56).
Moreover, whether or not section 5-322.1 would allow enforcement of a "partial indemnification” agreement is irrelevant here; the agreements in these cases explicitly provided for complete indemnification and there were findings that the general contractor was negligent. The question whether a negligent contractor /promisee could enforce an indemnification agreement, notwithstanding section 5-322.1, so long as the agreement did not purport to indemnify the contractor for its own negligence is not before us.
Accordingly, in Itri, the order of the Appellate Division should be affirmed, with costs, and in Stottlar, the order of the Appellate Division should'be reversed, with costs, and the judgment of Supreme Court reinstated.
Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Titone taking no part.
In Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co.: Order affirmed, with costs.
In Stottlar v Ginsburg Dev. Corp.: Order reversed, with costs, and judgment of Supreme Court, Westchester County, reinstated.

. The indemnification agreement between MNT and Itri provided that: "The second party [Itri] shall hold the first party [MNT] harmless from all liability, loss, cost or damage from claims for injuries or death from any cause, while on or near the project, of its employees or the employees of its subcontractors, or by reason or claims of any person or persons for injuries to person or property, from any cause occasioned in whole or in part by any act or omission of the second party, its representatives, employees, subcontractors or suppliers and whether or not it is contended the first party contributed thereto in whole or in part, or was responsible therefor by reason of non-delegable duty.”

. Itri’s policy with Aetna excludes bodily injuries to "[a]n employee of - the insured arising out of and in the course of employment by the insured.” There is an exception to the exclusion, however, for "liability assumed by the insured under a contract or agreement.”

. The indemnification agreement between Ginsburg and Shopovick provided that: "ginsburg development corp. and the owner of the property * ** * shall be indemnified and held harmless from any and all liability, action or claims (just or unjust) and from any and all resulting damages, ex *792 penses, costs or fees (including attorney’s fees), made by any person, whether employees of the Subcontractor or otherwise, (including death resulting therefrom) and on account of injuries and damages to all property or violations of statutes and ordinances or municipal rules and regulations, in connection with or resulting from the work or by reason of the operations performed on behalf of or on the property of ginsburg development corp. by the named insured Subcontractor, his agents, servants or employees.”

. The CNA policy is virtually identical to the one at issue in Itri. There is some confusion in the record with regard to the identity of the carrier that provided this policy to Shopovick — Transcontinental Insurance Company or CNA (a group of carriers including Transcontinental). For clarity, we refer to the carrier as CNA.

. We would note that without a finding of negligence on the part of the general, the agreements as applied would not run afoul of the proscriptions of General Obligations Law § 5-322.1 (see, Hawthorne v South Bronx Community Corp., 78 NY2d 433; Brown v Two Exch. Plaza Partners , 76 NY2d 172, 179, supra).