Crespo v City of New York (2004 NY Slip Op 50197(U))

[*1]

Crespo v City of New York

2004 NY Slip Op 50197(U)

Decided on April 2, 2004

Supreme Court, Bronx County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 2, 2004

Supreme Court, Bronx County,
 EMILIO CRESPO, Plaintiff,
against
CITY OF NEW YORK, THE DORMITORY AUTHORITY OF THE STATE OF NEW YORK, THE CITY UNIVERSITY OF NEW YORK, AND S & P CONSTRUCTION MANAGEMENT, INC., AND TDX CONSTRUCTION CORPORATION, Defendants. TDX CONSTRUCTION CORPORATION, Third-Party Plaintiff, S & P CONSTRUCTION MANAGEMENT, INC., AND NATIONWIDE PROPERTY AND CASUALTY INSURANCE CO., Third-Party Defendants.
Index No. 23922/99

Conway, Farrell, Curtin & Kelly, P.C. By Jonathan Uejio
Attorneys for Third-Party Defendants S & P Construction Management, Inc. and Nationwide Property and Casualty Insurance Co.
48 Wall Street, 20th Floor
New York, N.Y. 10005
212 785-2929
Richard Geller, Esq.
Geller & Siegel LLP
Attorneys for Plaintiff Emilio Crespo
419 Park Avenue South
New York, N.Y. 10016
212 532-0532
Brian T. Deveney, Esq.
O'Connor, O'Connor, Hintz & Deveney, LLP
Attorneys for Defendant/Third Party Plaintiff TDX Construction Corporation
One Huntington Quadrangle, Suite 1C07
Melville, New York 11747-4415
[*2]
631-777-2330

Paul A. Victor, J.
THE PARTIES AND THE MOTION
In the above-entitled proceedings, the only action left remaining is a third party contract proceeding in which the third party plaintiff, TDX Construction Corporation (TDX), a construction manager, seeks to enforce its rights and benefits as an "additional insured" under a casualty insurance policy obtained by a subcontractor, the third party defendant S&P Construction Management Inc. (S&P)[FN1], from Nationwide Property and Casualty Co. (Nationwide), which is also named as a third party defendant.
TDX now moves for an order and judgment declaring:
(1) that as an additional insured under the Nationwide policy it is entitled to primary coverage for vicarious liability imposed on it as a result of the fault of S&P;
(2) that the proceeds of the two million dollar Nationwide policy be applied to the judgment and accrued interest obtained against TDX in the underlying labor law tort proceeding; and
(3)that TDX be covered and/or reimbursed for all counsel fees incurred including, without limitation thereto those fees which may be incurred as a result of an anticipated claim to be made by the Dormitory Authority of the State of New York (DASNY) against TDX for counsel fees incurred by DASNY in defending itself in the underlying action. 
THE ISSUE EXPLICATED
Contractual indemnification and liability insurance coverage issues, arising out of construction contacts, have spawned, and continue to spawn what appears to be a never-ending series of legal disputes between owners, contractors and/or their respective insurance carriers.
These disputes (some novel) invariably evolve from the vague, imprecise and ambiguous language which is either ineptly or purposely employed by the parties to such written contracts and insurance agreements, and which provides a fertile field for creative counsel to plow in search of exceptions, exemptions and reasons to deny coverage. The matter at issue presents just such a dispute; and the real issue is whose insurance carrier (TDX's or S & P's) shall bear the burden of paying the verdict in the underlying tort action. (See, e.g., North Star Reinsurance Corporation v. [*3]Continental Insurance Company, 82 N.Y.2d 281, 624 N.E.2d 647, 604 N.Y.S. 2d 510 [1993].) Although the Nationwide policy herein unambiguously names TDX and other named entities as additional insureds, it then apparently attempts to explain, limit, and/or retract such coverage by the addition of the following provision:
"WHO IS AN INSURED *** is amended to include as an insured the Person or Organization in the Schedule, but this insurance with respect to such Person or Organization applies only to the extent that such Person or Organization [TDX] is held liable for your [S & P's] acts or omissions arising out of and in the course of operations performed for such Person or Organization by you or your subcontractor."
[matters in brackets have been added].
The novel argument now advanced by the third party defendants (all of whose attorneys have been retained by Nationwide) is that TDX would be covered as an additional insured under the Nationwide policy only if TDX had been held in the underlying tort proceeding to be 100% vicariously liable for negligent acts of S&P. In other words, the third party defendants argue that since there was a finding by the jury in the underlying tort proceeding that TDX was partially at fault for the happening of the accident ( fault was apportioned 25% against TDX and 75% against S&P), TDX has no coverage under the Nationwide policy.
RELEVANT BACKGROUND
Plaintiff in the underlying action was an employee of S & P, a subcontractor employed in connection with a construction project undertaken by the owner Dormitory Authority of the State of New York (DASNY). TDX was the construction manager for DASNY. Plaintiff was injured when he fell from an extension ladder which had been erected on top of a scaffold in order to allow plaintiff to scrape and clean steel beams. Plaintiff eventually sought recovery for his injuries in a personal injury action based on Labor Law 240 (1). This Court (Victor, J.) granted summary judgment finding that DASNY and its construction manager TDX were statutorily liable for the Labor Law violation. This Court found, in addition, that there existed issues of fact as to whether TDX was actively negligent in failing to control unsafe practices of which TDX was aware. In that regard the court noted that a TDX employee admitted knowledge that plaintiff had been using a ladder placed on top of a "Baker" scaffold, an allegedly unsafe practice which resulted in injury to plaintiff.
S&P had procured, as it was obligated to do by contract, a policy of insurance from Nationwide naming DASNY and TDX as additional insureds. Nationwide provided a defense to DASNY, but refused to provide a defense to defendant TDX . TDX subsequently brought a third-party action against S & P and Nationwide seeking a defense and indemnity. Justice Stanley Green eventually determined, based in part on this Court's earlier determination, that Nationwide was obligated to defend TDX, but that the issue of Nationwide's obligation to insure TDX must await a determination of TDX's liability in the underlying action.
The Appellate Division, First Department, affirmed both this Court's written decision (2001 N.Y. Slip op. 40516[u]) and Justice Green's subsequent determination, holding as follows (303 A.D.2d 166):
"This case arises out of plaintiff's fall from a ladder that was placed on top of a scaffold. The motion [*4]court correctly found that there is a triable issue of fact as to whether construction manager TDX was negligent in failing to obviate the hazard alleged to have caused plaintiff's harm and, thus, as to whether it is entitled to indemnification from S&P. A TDX superintendent testified that, one week before plaintiff's accident, he told S&P (plaintiff's employer) that the use of a ladder on top of a scaffold was unsafe. This directive respecting
the precise hazard alleged to have caused plaintiff's injury is indicative of more than general supervisory control by TDX and precludes, at this juncture, any legal conclusion that TDX was free from negligence (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 353 [1998]; Squires v Robert Marini Bldrs., 293 AD2d 808, 809 [2002], lv denied 99 NY2d 502 [2002]).
The denial of that portion of TDX's motion for summary judgment seeking a declaration that Nationwide is obliged to indemnify it was also proper. The additional insured endorsement pursuant to which indemnification from Nationwide is sought states that the insurance "with respect to [TDX] applies only to the extent that [TDX] is held liable for [S&P's] acts or omissions." Inasmuch as it has not yet been determined whether plaintiff's harm was caused by negligence by S&P, and it remains possible that the trier of fact will find that plaintiff's harm was caused by negligence by TDX, it cannot now be determined whether TDX's claim falls within the subject additional insured endorsement (see Brookhaven Mem. Hosp. Med. Ctr. v County of Suffolk, 155 AD2d 404, 406 [1989]). Although TDX contends that it is entitled to indemnification because Nationwide did not issue a timely disclaimer, if a claim falls outside the scope of an insurance policy's coverage portion, as TDX's claim may, disclaimer pursuant to Insurance Law § 3420 (d) is unnecessary (see Matter of Worcester Ins. Co. v Bettenhauser, 95 NY2d 185, 188 [2000])." (Emphasis supplied.)
The underlying action was subsequently tried by Justice Saks. Justice Saks directed a verdict of negligence against S & P, and submitted the issue of the apportionment of TDX's and S & P's negligence to the jury. The jury apportioned the fault for the occurrence of the accident 75% against defendant S & P, and 25% against TDX. The jury's total award, as reduced by Justice Saks, inclusive of medical expenses, amounted to two million seven hundred and sixty five thousand six hundred and seventy five ($2,765, 675) dollars. A 75% portion of this sum, together with accrued interest, exceeds the full amount of the Nationwide policy limit of $2 million.[FN2]
[*5]
DISCUSSION
TDX argues that it is entitled to indemnity from Nationwide for 75% of the judgment (i.e., for that part attributable to S&P's negligence).
S & P and Nationwide argue, to the contrary, that Nationwide's policy insures TDX only in those instances when TDX is held 100% vicariously liable for the acts of S & P. They conclude that the language of the policy precludes any coverage to TDX in the event that TDX is found, even to the extent of 1%, to have been at fault. Their argument is based on the language of the policy which recites that TDX, as an additional insured, is indemnified by the policy "only to the extent that [TDX] is held liable for your [ S & P's] acts or omissions." They contend that since TDX was found to be partially at fault, TDX must bear full responsibility for the happening of the accident and must pay the entire verdict under the concept of joint and several liability. They claim that it was not the intent of Nationwide to provide any insurance coverage to the additional insureds if said insureds were in any manner actively at fault. The tortured argument advanced by those defendants, appears to be that the words "only to the extent" should be interpreted to mean "only if", and that the 100% requirement should be implied. In other words, it is urged that the court revise the provision to mandate that TDX would be indemnified "only if TDX is held 100% vicariously liable for S & P's acts or omissions". However, nothing in the policy or in the documents submitted on this motion supports such a radical interpretation.[FN3] Moreover this suggested interpretation is inconsistent with
 the unambiguous language of the policy which indicates that there is an "extent" to which TDX would be a covered insured. The endorsement provides that TDX is entitled to be indemnified "... to the extent that [TDX] is held liable for [S & P's] acts or omissions." Nothing in contract between TDX and S&P or in the Nationwide insurance policy supports the unjust metamorphosis of this provision into that which they now suggest. Clearly, the words "if" and "100%" appear only in the imagination of Nationwide, the insurance carrier now seeking to renege on its promise to provide insurance coverage and indemnity to TDX for that part of the tort committed by its primary insured S & P; and the creative arguments advanced by its counsel, in support of this "imaginative" position, borders on the frivolous [FN4].
In any event this court interprets the above phrase as meaning that TDX is a covered insured to the 75% extent that it is held to pay damages resulting from the active negligence of S & P. In [*6]other words, the exclusionary language of the policy applies "only" to the 25% extent that TDX contributed to the happening of this accident. Not only is this a fair and rational explanation of the meaning of the limiting phrase, it also is consistent with good business practice as well as with the obvious and salutary intention of all parties to the contract to provide another level of insurance. In addition the limiting language, although not mandated by, is consistent with a general public policy which prohibits a person or entity from seeking contractual indemnification from its own acts of negligence. (See, GOL 5.322.1.) This reference to the GOL is not meant to imply that a party to a construction contract , such as the construction manager herein, could not seek to be fully indemnified
 for its own acts of negligence via a contractual obligation imposed on a subcontractor to obtain insurance for the construction manager.[FN5]
In any event, the Nationwide insurance policy, does not expressly preclude partial indemnity. Obviously, such a provision could easily have been included in the Nationwide insurance policy if that was the intent of the insurer. The Court must adhere to a construction of the policy which gives a rational effect to all of the words used, since it is axiomatic that a reasonable effort must be made to harmonize all of the terms of an insurance contract. (Oot v. Home Ins. Co. of Indiana, 244 A.D.2d 62, 676 N.Y.S.2d 715 [4th Dept. 1998].) If any ambiguity exists in this regard, it must be must be resolved in favor of the insured and against the insurer in accordance with established principles of law. (See, United States Fid. & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 232, 501 N.Y.S.2d 790, 492 N.E.2d 1206.; State Capital Mutual Ins. Co. 213 A.D.2d 888, 623 N.Y.S. 2d 660 [3rd Dept 1995].)
Counsel Fees
[*7]The court must at this time deny TDX's request for indemnity for attorney's fees which might be claimed by the DASNY. It appears, based on oral argument, that the issue is not yet ripe for determination and thus it is both speculative as well as premature. In any event, as there exist other issues of fact with regard to the issue of counsel fees, summary judgment is denied at this time.
CONCLUSION
The motion by the third party plaintiff is granted (except as to the claim for attorney's fees); and the cross-motion is denied. The aforesaid claim for counsel fees is denied without prejudice to renew if such a claim is made against TDX.
Settle order.
 
DATEHon. Paul A. Victor, J.S.C.
Decision Date: April 02, 2004
Footnotes

Footnote 1: Although S & P was named as a direct defendant in the primary tort action, the plaintiff discontinued against S & P. The action against defendant City of New York was later dismissed on motion. 

Footnote 2: The Court notes that S & P is no longer a direct defendant, nor should it have been, due to the bar of the Workers' Compensation Law which precludes a plaintiff laborer from suing his or her direct employer. This Court further notes that Article 16 apportionment does not apply in Labor Law cases, which means that TDX, as the main statutorily liable defendant, must pay the full amount of the judgment regardless of what it can seek to recoup from S & P as a consequence of the agreement to indemnify and insure. The Court further notes that a third party action by a contractor such as TDX can not generally be maintained against plaintiff's employer for contribution unless the plaintiff has sustained a "grave injury" as defined in the Labor Law. However, TDX can and has sought judgment against S & P in a third party action based on contractual indemnification and based on S & P's obligation to provide insurance coverage to TDX. Although this action seeks indemnity, it is in fact a dispute between the insurers (for TDX and S & P), since third party defendant S & P is apparently a defunct entity.

Footnote 3: The court notes, in addition, that no evidence has been submitted by the third party defendants (in the motion papers or at oral argument) which would demonstrate that it was the prior intent of any or the parties to insert such a radical clause in the policy; or that such a limitation on coverage was ever considered or negotiated.

Footnote 4:Some jurists might even consider these arguments to be "completely without merit in law" as to warrant costs and sanctions, or both, as permitted by Section 130-1.1 of the Rules of the Chief Administrator.

Footnote 5: It is true that General Obligations Law § 5-322.1 renders unenforceable any contractual agreement purporting to indemnify contractors against liability for injuries contributed to, caused by or resulting from their own negligence, whether such negligence be in whole or in part (Itri Brick and Concrete Corp. v. Aetna Cas. & Sur. Co., 89 N.Y.2d 786, 658 N.Y.S.2d 903, 680 N.E.2d 1200; see also National Union Fire Ins. Co. of Pittsburgh v. State Ins. Fund, 266 A.D.2d 518, 699 N.Y.S.2d 111). That section does not apply to insurance obtained on behalf of a negligent party, nor does it " bar enforcement of a contractual indemnity provision where the indemnitee is held strictly liable under Labor Law § 240(1) and there was no evidence of its negligence" (Buccini v. 1568 Broadway Assoc., 250 A.D.2d 466, 468, 673 N.Y.S.2d 398; see also Brown v. Two Exchange Plaza Partners, 76 N.Y.2d 172, 556 N.Y.S.2d 991, 556 N.E.2d 430; Hoelle v. New York Equities Co., 258 A.D.2d 253, 684 N.Y.S.2d 539; Newell v. Almeter- Barry Constr. Mgmt. Inc., 245 A.D.2d 1081, 667 N.Y.S.2d 551). In addition a careful reading of Itri Brick does not indicate that a contractor who is in part negligent is barred from seeking partial indemnity. (See, Dutton v. Charles Pankow Builders, Ltd., 296 A.D.2d 321, 745 N.Y.S.2d 520 [1st Dept. 2002], leave to appeal denied, 99 N.Y.2d 511, 790 N.E.2d 276, 760 N.Y.S.2d 102 [2003].) In Dutton it was held that a general contractor who was found to be 20% responsible for a labor law claim was not precluded from seeking "partial indemnity" against a subcontractor. The Court noted that the indemnification clause in that case provided that the subcontractor would indemnify the general contractor for all liabilities arising out of personal injuries sustained in connection with the subcontractor's work "to the fullest extent permitted by applicable law...regardless of whether [the general contractor is] partially negligent ... exclud[ing] only liability created by the [general contractors's] sole and exclusive negligence".