■ ANTONIO FREITAS et al., Appellants-Respondents, v NEW YORK CITY TRANSIT AUTHORITY, Respondent, and LEHRER & McGOVERN, INC., Respondent-Appellant and Third-Party Plaintiff, et al., Third-Party Defendant. [672 NYS2d 101] —Order, Supreme Court, New York County (Robert Lippmann, J.), entered October 2, 1996, which, *inter alia*, granted defendant Lehrer & McGovern, Inc.'s motion for summary judgment on the Labor Law § 241 (6) claims and dismissed said claims and denied the motion with respect to the claim under Labor Law § 200, unanimously modified, on the law, to the extent of denying that portion of defendant's motion directed against the

claim based on a violation of Labor Law § 241 (6) and 12 NYCRR 23-1.28 (b), reinstating that claim, and otherwise affirmed, without costs or disbursements.

Plaintiff Antonio Freitas, in the employ of third-party defendant Rite-Way Interior Removal, Inc., was pushing a dumpster full of construction debris at a subway project when the wheels on the dumpster "got stuck." A co-employee pulled the dumpster to make it move and it tipped over, crushing plaintiff's hand.

The general contractor on the project moved to dismiss the plaintiffs' Labor Law claims and the IAS Court granted this motion with respect to the claims pursuant to all sections of the Labor Law except section 200 alleging general negligence. The plaintiffs challenge the dismissal of their section 241 (6) claims.

The IAS Court properly dismissed the claim pursuant to Labor Law § 241 (6) based on an alleged violation of the Industrial Code provision providing, in pertinent part:

"Where the demolition of any building or other structure is being performed by hand, debris, bricks and any other materials shall be removed as follows:

"(1) By means of chutes constructed and installed in compliance with this Part (rule);

"(2) By means of buckets or hoists; or

"(3) Through openings in the floors of the building or other structure in compliance with this section." (12 NYCRR 23-3.3 [e].)

As the motion court found, this rule obviously applies to debris being removed from a height to the ground and does not apply in the present situation where debris on the ground was being collected. In such circumstances, a "bucket," a "hoist" or "chute" would simply be inappropriate for the removal of debris while the wheeled container used *was* appropriate.

However, the other claim alleges a violation of 12 NYCRR 23-1.28 (b): "Wheels of hand-propelled vehicles shall be maintained free-running and well secured to the frames of the vehicles. Buggy handles shall not extend beyond the wheels on either side."

Contrary to the conclusion reached by the IAS Court, this regulation promulgated under the Labor Law is not simply "a routine incorporation of the ordinary tort duty of care" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 504), but "a specific, positive command" (*Allen v Cloutier Constr. Corp.*, 44 NY2d 290, 297). It "mandates a distinct standard of conduct,

rather than a general reiteration of common-law principles" (*Rizzuto v Wenger Contr. Co.,* 91 NY2d 343, 351). It, therefore, can be relied upon as the source of a non-delegable duty by the owner or general contractor owed to all workers performing construction chores on the premises, and its violation would constitute "*some evidence of negligence*" (*supra,* at 351).

Instead of using words such as "proper," "safe" or "reasonable" in describing vehicles used, the regulation specifically and concretely requires "free-running" wheels that are "well secured." These requirements are obviously intended to insure that wheels do not collapse or stick causing a vehicle to tip over and injure a worker.

Finally, the IAS Court properly denied that portion of the motion which sought the dismissal of the Labor Law § 200 claim. This section, which is a codification of the common-law duty of an employer to provide employees a safe place to work, applies to an owner or contractor who exercises control or supervision over the work performed at the accident site and has actual or constructive notice of an unsafe condition (*Allen v Cloutier Constr. Corp., supra*). Here, the general contractor's own witness testified that it had a "safety manager" on the job daily. Further, the general contractor not only held safety meetings attended by the sub-contractors; it had a contract with plaintiff's employer Rite-Way giving it direct control over Rite-Way. Moreover, the general contractor had a specific construction schedule for Rite-Way, with the right to dictate when Rite-Way would do its work and when it would not. The general contractor also had the right to terminate the contract at any time. We have previously held that "[t]he testimony of defendant's chief construction inspector that he was stationed at the work site, inspected the work on a daily basis, kept a daily log, and had the authority to stop the performance of and to order the correction of unsafe work practices raise issues of fact as to whether defendant supervised the work site" (*Gawel v Consolidated Edison Co.,* 237 AD2d 138, 138-139). Likewise, in this case, there are factual issues as to whether the general contractor retained control and supervision over the work site (*Rizzuto v Wenger Contr. Co., supra*). Concur—Rosenberger, J. P., Ellerin, Nardelli, Williams and Andrias, JJ.