(April 6, 2006)

■ SEAN O'SULLIVAN, Appellant, v IDI CONSTRUCTION COMPANY, INC., Respondent, et al., Defendant. IDI CONSTRUCTION COMPANY, INC., Third-Party Plaintiff, v TEMAN ELECTRICAL CONSTRUCTION, INC., et al., Third-Party Defendants-Respondents. [813 NYS2d 373]—

Order, Supreme Court, New York County (Sherry Klein Heitler, J.), entered February 9, 2005, which, insofar as appealed from as limited by the briefs, granted the motion by defendant IDI Construction Company (IDI) for summary judgment dismissing the complaint, affirmed, without costs.

Plaintiff, while working as the employee of a subcontractor at a construction site, tripped over an electrical pipe protruding two or three feet from a newly laid floor. For the reasons explained below, the motion court correctly granted the motion for summary judgment dismissing plaintiff's causes of action against IDI, the general contractor, for alleged violation of Labor Law §§ 200 and 241 (6), and for common-law negligence. We observe that IDI is the only direct defendant that has appeared or answered in this action.

To prevail on a cause of action pursuant to Labor Law § 241 (6), a plaintiff must prove a violation of a provision of the Industrial Code that sets forth a specific safety standard (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 505 [1993]). Here, the record contains no evidence of any violation of 12 NYCRR 23-1.7 (e) (1) or (2) (relating to tripping hazards in passageways or work areas caused by the accumulation of dirt, debris or obstructions), the Industrial Code provisions on which plaintiff bases his Labor Law § 241 (6) cause of action. The record reveals that plaintiff was injured in an open work space, not

a passageway (*see Alvia v Teman Elec. Contr.*, 287 AD2d 421, 423 [2001], *lv dismissed* 97 NY2d 749 [2002]; *Isola v JWP Forest Elec. Corp.*, 267 AD2d 157, 158 [1999]). Moreover, he did not trip over an accumulation of dirt, debris, scattered tools or materials, but rather over a permanently placed electrical pipe, and there is no liability under section 241 (6) where the injury-producing object is an integral part of what is being constructed (*see Isola v JWP Forest Elec. Corp.*, 267 AD2d at 158; *Vieira v Tishman Constr. Corp.*, 255 AD2d 235, 235-236 [1998]). Despite plaintiff's argument to the contrary, the record is clear that the protruding pipe was an integral part of the floor on which he was working. Indeed, plaintiff conceded that the conduit he tripped over appeared to be permanent. Unlike the situation in *Rizzo v HRH Constr. Corp.* (301 AD2d 426 [2003]), the record here is sufficiently developed "to permit [a] finding[ ] that the [obstruction] was . . . an integral part of a floor under construction" (*id.* at 427 [citations omitted]).

Plaintiff's claims for common-law negligence and under Labor Law § 200, which is a codification of the owner's or general contractor's common-law duty to maintain a safe construction site, were also properly dismissed. In order to prevail on such a claim against an owner or general contractor, a plaintiff must prove that the party so charged had authority or control over the activity causing the injury, thus enabling it to avoid or correct an unsafe condition (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]). Not only was the allegedly dangerous condition here (failing to safeguard workers against the tripping hazard created by the protruding pipes) created by a subcontractor, but the record is devoid of any evidence that IDI, the general contractor, supervised, controlled or directed the performance of plaintiff's job. Plaintiff has admitted never speaking with or taking instructions from anyone other than his supervisor at Cosner. Therefore, while the general contractor's on-site safety manager may have had overall responsibility for the safety of the work done by the subcontractors, such duty to supervise and enforce general safety standards at the work site was insufficient to raise a question of fact as to its negligence (*see Singh v Black Diamonds LLC*, 24 AD3d 138, 140 [2005]; *Torres v Morse Diesel Intl., Inc.*, 14 AD3d 401, 403 [2005]). Absent any evidence that IDI gave anything more than general instructions as to what needed to be done, as opposed to how to do it, these entities cannot be held liable under Labor Law § 200 or for common-law negligence (*see Dalanna v City of New York*, 308 AD2d 400 [2003]).

We note that the dissent's reliance on *Singh v Black Dia-*

*monds LLC* (24 AD3d 138 [2005], *supra*) as support for reinstating the Labor Law § 200 claim is completely misplaced. On the contrary, *Singh* plainly requires dismissal of that cause of action under the uncontroverted facts appearing in the record of this case. In *Singh*, we affirmed summary judgment dismissing negligence and Labor Law § 200 claims against a general contractor (Bovis), notwithstanding that the Bovis project superintendent "conducted regular walk-throughs and, if he observed an unsafe condition, had the authority to find whoever was responsible for the condition and have them correct it or, if necessary, stop the work" (24 AD3d at 140). Indeed, even though the Bovis project superintendent had "discussed covering the subject hole in the roof [through which the plaintiff later fell]" and "had inspected the plywood in question after it had been nailed down over the hole" (*id.*), we held that such activity "simply indicate[d] Bovis's general supervision and coordination of the work site and [was] *insufficient to trigger liability*" (*id.* [emphasis added], citing *Vasiliades v Lehrer McGovern & Bovis*, 3 AD3d 400, 401-402 [2004]). Thus, that the general contractor in this case "had an on-site safety manager with responsibility for the safety of the work done by subcontractors" does not (contrary to the dissent's assertion) provide any basis for imposing liability on the general contractor based on an injury allegedly caused by a subcontractor's work.

There is no basis in the record for the dissent's speculation that IDI's safety manager in this case had greater authority or obligation to act than did Bovis's project superintendent in *Singh*. The *Singh* project superintendent's "authority to find whoever was responsible for the [unsafe] condition and have them correct it or, if necessary, stop the work" (24 AD3d at 140) is not meaningfully distinguishable from the task of "directing the correction of an unsafe condition" that the dissent attributes to the safety manager in this case. At any rate, no rational inference of a distinction between the roles of these officials can be drawn from the fact that the official in *Singh* was called a "project superintendent" while the official here was called a "safety manager." As to the dissent's suggestion that IDI could be held liable for the "decision as to where to situate the conduit," there does not appear to be any basis in the record for the dissent's implicit speculation that it would have been possible for the "overall construction plan" to have placed the conduit at another spot that would have posed less of a risk.

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Andrias, J.P., Friedman and Williams, JJ.

Saxe and Malone, JJ., dissent in part in a memorandum by Saxe, J., as follows: On October 14, 2000, while employed as a cement and concrete laborer at a multistory construction site at the corner of 51st Street and First Avenue in Manhattan, plaintiff Sean O'Sullivan was injured when he tripped over a two-to-three-inch-wide pipe sticking up from the floor to a height of two to three feet. Although he had noticed the presence of the pipe before, on this occasion he was carrying two three-by-four-inch wooden ribs, used to support concrete forms, and did not see the pipe.

The property was owned by defendant 251 East 51st Street Corp., defendant IDI Construction Company was the general contractor on the project, plaintiff's employer, third-party defendant Cosner Construction, was the concrete subcontractor, and the other third-party defendant, Teman Electrical Construction, Inc., was the electrical subcontractor.

I agree with the majority that plaintiff has no viable claim under Labor Law § 241 (6). The Industrial Code regulation set forth in 12 NYCRR 23-1.7 (e) is inapplicable to a pipe permanently embedded in the poured concrete floor, which is clearly an integral part of the plan of construction, and not an accumulation of debris or an obstruction that ought to have been removed (*see Alvia v Teman Elec. Contr.*, 287 AD2d 421 [2001]).

However, in my view, questions of fact are presented which preclude summary judgment dismissing plaintiff's cause of action pursuant to Labor Law § 200 and on a theory of common-law negligence. Section 200, which codifies the common-law duty of a property owner and general contractor to provide workers with a safe workplace, requires workplaces to be constructed so as to provide reasonable and adequate protection to the safety of workers (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]). On the record before us, it cannot be determined as a matter of law whether plaintiff's work site was constructed so as to provide a reasonably safe place to work.

Metal pipes and objects sticking up from the ground regularly serve as the basis for common-law negligence claims brought against the owner of the property or creator of the condition by people injured tripping over such objects, based upon the argument that the defendant created or harbored an unsafe condition (*see e.g. Cabrera v City of New York*, 21 AD3d 1047 [2005]; *Cappella v City of New York*, 6 AD3d 567 [2004]; *Maroccia v Reid*, 308 AD2d 513 [2003]). A worker should be no less protected by the common law where an unsafe condition is created or allowed to remain in the workplace. The question of whether the pipe at issue here was constructed and placed in

such a way as to make it reasonably safe, is not amenable to determination as a matter of law, and must be left to a jury.

In this regard, it is instructive to consider the deposition testimony of the general contractor's on-site safety manager. His testimony acknowledged the general practice that conduits sticking up out of the floor are not only color-coded in bright colors, but are generally also barricaded, that is, surrounded by wood or styrofoam, to minimize the risk of injury. Yet, there is no claim that the pipe at issue here was barricaded or enclosed in this way. The claim that the pipe was color-coded to be as visible as possible is not only a disputed fact, but is of limited importance where workers' tasks may include carrying large items that prevent them from being able to see the lower portion of the area into which they are walking.

If it was clearly established that the unsafe condition "was not a defect inherent in the property, but rather was created by the manner in which plaintiff's employer performed its work," the owner and general contractor would be entitled to dismissal of the section 200 claim (*see Dalanna v City of New York*, 308 AD2d 400, 400 [2003]; *see also Reilly v Newireen Assoc.*, 303 AD2d 214, 219 [2003], *lv denied* 100 NY2d 508 [2003]). However, on this record, we cannot hold as a matter of law that the conduit sticking up from the floor was created independently by the subcontractor, and that the owner and contractor had no input into its presence or location. Indeed, that it is permanently embedded in the floor tends to reflect that its location there was not the result of the independent decision on the part of the subcontractor, but rather, may well have been pursuant to the general construction plans regarding where, and how, wiring was to be run through the building.

Moreover, the Labor Law § 200 claim against the general contractor may not properly be dismissed here on the theory that as a matter of law the general contractor lacked the authority to "control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d at 352 [internal quotation marks and citations omitted]; *Singh v Black Diamonds LLC*, 24 AD3d 138, 140 [2005]). The activity that brought about the injury was the creation of an unsafe condition through the placement of the conduit where it was situated, as well as the failure to then barricade it. The decision as to where to situate the conduit was very likely dictated not by the subcontractor but by the overall construction plan, without sufficient concern for the hazard it could create to workers during the construction process. As to the suggestion that the facts here are indistinguishable from

those in *Singh v Black Diamonds LLC* (*supra*), therefore mandating dismissal, the analogy is forced. The job of the "project superintendent" in *Singh* involved conducting regular walkthroughs, and included the authority, though apparently not the obligation, to have unsafe conditions corrected (*id.* at 140); in contrast, a "site safety manager," such as the general contractor put in place here, must be a meaningless position indeed if that individual's assigned tasks do not include his directing the correction of an unsafe condition.

Inasmuch as the general contractor assigned to the site an employee called the "site safety manager" whose job it was to supervise the subcontractors in regard to safety, and report safety problems to the appropriate foreman, it makes little sense to hold that, as a matter of law, this general contractor lacked the authority to "control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d at 352 [internal quotation marks and citation omitted]).

For the foregoing reasons, I would reverse to the extent of denying summary judgment to defendant with respect to the Labor Law § 200 claim and reinstating that claim.