(May 10, 2007)

■ James Hughes et al., Respondents, v Tishman Construction Corp. et al., Defendants, and Tishman Westside Construction, LLC, et al., Appellants. (And a Third-Party Action.) [836 NYS2d 86]—

Order, Supreme Court, New York County (Richard F. Braun, J.), entered October 21, 2005, which, insofar as appealed from, denied those aspects of the motion of defendant Tishman Westside Construction for summary judgment dismissing plaintiffs' causes of action based on common-law negligence and Labor Law § 200, and denied the cross motion of defendant A & B Preferred Concrete Pumping Service for similar relief, modified, on the law, those aspects of the motion of Tishman Westside Construction seeking summary judgment dismissing plaintiffs' causes of action based on common-law negligence and Labor Law § 200 granted and those causes of action dismissed as against Tishman Westside Construction, and otherwise affirmed, without costs.

On April 10, 2001 plaintiff James Hughes, a concrete laborer, was working on a construction project near Times Square. Hughes was employed by P.M. Sorbara (Sorbara), a subcontractor on the project. On that date, Hughes and his coworkers were spreading concrete on the 14th floor of a building that was under construction. The concrete was pumped up to that floor from the street below by a truck owned by defendant A & B Preferred Concrete Pumping Service (A & B), which had leased the vehicle to Sorbara. The concrete reached the 14th floor through a series of pipes leading from the truck to the 14th floor. Pressure in the pipes was regulated by gauges on the truck controlled by the operator of the truck. A hose attachment was inserted at the laborers' end of the pipes that allowed the laborers to spread the concrete. Hughes sustained personal injuries when pressure from the hose caused the hose to "whip[]" around and strike another worker, who fell onto Hughes. The incident occurred while Hughes and several of his coworkers were attempting to remove an obstruction from the pipes.

Hughes, and his wife derivatively, commenced this action

against, among others, A & B and defendant Tishman Westside Construction, LLC (Tishman), the construction manager for the project, asserting claims under Labor Law § 200 and for common-law negligence.[1] Plaintiffs claimed that Tishman negligently supervised the work, and that A & B was liable for the negligence of the operator of the truck, who plaintiffs claimed failed properly to control the pressure in the pipes. Tishman moved for summary judgment dismissing, inter alia, plaintiffs' causes of action under Labor Law § 200 and for common-law negligence on the ground that it did not control the means or methods of the work performed by Hughes. A & B cross-moved for, inter alia, similar relief, arguing that it merely leased the truck to Sorbara and did not employ the operator of the truck. Supreme Court denied those aspects of the motion and cross motion.[2]

Where a claim under Labor Law § 200 is based upon alleged defects or dangers arising from a subcontractor's methods or materials, liability cannot be imposed on an owner or general contractor unless it is shown that it exercised some supervisory control over the work (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]). "It is well settled that an implicit precondition to th[e] duty [to maintain a safe construction site] is that the party to be charged with that obligation 'have the *authority to control the activity bringing about the injury to enable it to avoid* or correct an unsafe condition' " (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998], quoting *Russin v Louis N. Picciano & Son*, 54 NY2d 311, 317 [1981]). General supervisory authority is insufficient to constitute supervisory control; it must be demonstrated that the contractor controlled *the manner in which the plaintiff performed his or her work*, i.e., how the injury-producing work was performed (*see O'Sullivan v IDI Constr. Co., Inc.*, 7 NY3d 805 [2006], *affg* 28 AD3d 225 [2006]; *Cahill v Triborough Bridge & Tunnel Auth.*, 31 AD3d 347 [2006]; *Dalanna v City of New York*, 308 AD2d 400 [2003]; *see also Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876 [1993]).

Essen, Tishman's project superintendent, testified that his job was to "[o]versee all job site activities as it [*sic*] pertains to the schedule and conformance of plans and specifications," and

---

**1.** Plaintiffs initially asserted but ultimately withdrew causes of action under Labor Law § 240 (1) and § 241 (6).

**2.** The court granted the motion to the extent of dismissing all cross claims asserted against Tishman and granted the cross motion to the extent of dismissing all cross claims asserted against A & B. Those portions of the order have not been challenged on this appeal.

"monitor[ ] the [project's] milestone schedule [i.e., schedule of all activities from start to completion of project]." Essen also testified that Tishman did not control the means or methods of the subcontractors. Iannotta, Tishman's assistant superintendent, merely observed the concrete work and encouraged Hughes and his coworkers to "hurry up" and finish spreading the concrete. Iannotta's presence and encouragement are not sufficient to establish the requisite supervisory control (*see Haider v Davis*, 35 AD3d 363, 364 [2006] ["the owner's general supervision of the project, which consisted mostly of inspections and admonitions to hurry the work, was insufficient to raise a triable issue of fact as to the owner's liability under Labor Law § 200 or based on common-law principles"]). Notably, Hughes testified at his deposition that because concrete brought to the site must be used within a relatively brief window of time, "everybody is yelling at you to . . . hurry up." Whatever subjective feelings of "pressure" Hughes may have experienced as a result of Iannotta's admonitions to "hurry up" are of no legal moment. Those feelings do not bear on, and thus are insufficient to demonstrate a triable issue of fact with respect to, whether Tishman controlled the manner in which Hughes performed his work.

The conclusion that Tishman did not control the manner in which Hughes performed his work is buttressed by the following passage from Hughes' deposition:

"Q: When [Iannotta] was yelling for every one to hurry up and get the machine unclogged, did he tell you how to unclog the machine?

"A: No.

"Q: Has he ever told you how to go about doing your job?

"A: No, he is just a super that pushes the work.

"Q: Whom did you take orders from while you were at the job, who is your boss?

"A: My boss was [a foreman for Sorbara]. . . .

"Q: On the date of the accident, when you went about your job responsibilities, you testified before that the only person who supervised you was [a foreman for Sorbara]; is that correct?

"A: Yes."

Further evidence that Tishman did not control the manner in which Hughes and his coworkers performed their work is provided by the deposition testimony of Lawrence Rizzo, a site safety manager employed by Site Safety, LLC (Site Safety), the construction site safety coordinator. During his deposition, Rizzo gave the following testimony:

"Q: While you were at the [site], did you ever personally observe or overhear [Essen] or [Iannotta] or anyone from Tishman instruct a contractor such as Sobarra [*sic*] on the means and methods of their work?

"A: For clarification when you say means and methods, referring [*sic*] if they saw something is—that they didn't like and they wanted changed; what are you asking?

"Q: How to actually do the work?

"A: No.

"Q: Specifically with respect to the pouring of concrete or pumping out of concrete, did you observe or overhear them telling the contractors how to pour or pump the concrete?

"A: No, sir. . . .

"Q: For clarification, you asked counsel to clarify the question. Were there times that you observed . . . [Iannotta] or . . . Essen say something when they didn't like the manner which the work was performed to take corrective action?

"A. Talking on a safety issue?

"[Counsel for Tishman]: Note my objection.

"Q: Yes.

"A. He then would address as [*sic*] anyone would. As to method or means how to do it, I want you to pour this way, this way, no. However doing it, they were doing it. If a question of a safety issue, they would be addressed then. What are you doing? Why are you doing it this way? You know, to that effect. Don't tell them how to frame it or how to pour it . . . .

"Q: But did you see them address a safety issue?

"A: If there was a safety issue, I saw them address it."[3]

Moreover, Site Safety, which Tishman hired to comply with Administrative Code of the City of New York § 27-1009 (d),[4] did not control the manner in which Hughes performed his work.

---

3. To be sure, Rizzo also testified that he observed Iannotta overseeing the work on a "daily basis" and that if Iannotta "saw something that he didn't think was right, [he] would tell them to change it." This testimony demonstrates nothing more than that Tishman's assistant superintendent was not an idle or passive presence. Particularly given its utter generality, it does not undermine Rizzo's later and specific testimony that neither Essen nor Iannotta controlled the manner in which Hughes performed his work.

4. Administrative Code of the City of New York § 27-1009 (d) requires that a "construction site safety coordinator . . . be designated and present on a construction site in accordance with [the] rules and regulations [of the Department of Buildings]." The Rules and Regulations of the Department of Buildings require a construction site safety coordinator to be designated and present on the sites of certain specified construction projects (*see* 1 RCNY 26-01).

As the project's construction site safety coordinator, Site Safety was responsible for performing functions delineated in the Department of Buildings' Manual for Site Safety Programs (1 RCNY 26-01 [g] [3]), e.g., inspecting the construction site to monitor compliance with federal, state and local safety rules and regulations, generating and maintaining safety records and coordinating safety meetings. Site Safety's role on the site was limited to performing safety-related tasks; it did not have the authority to control the manner in which the trades performed their work nor did it attempt to do so (*see O'Sullivan*, 28 AD3d 225 [2006], *affd* 7 NY3d 805 [2006] [retention by general contractor of a site safety manager with duties similar to those of Site Safety insufficient to demonstrate a triable issue of fact with respect to general contractor's liability under Labor Law § 200 or for common-law negligence]). That Tishman, Site Safety, or both, may have had the authority to stop work for safety reasons is insufficient to raise a triable issue of fact with respect to whether Tishman exercised the requisite degree of supervision and control over the work being performed to sustain a claim under Labor Law § 200 or for common-law negligence (*see Peay v New York City School Constr. Auth.*, 35 AD3d 566, 567 [2006]; *Singh v Black Diamonds LLC*, 24 AD3d 138, 140 [2005]; *Carney v Allied Craftsman Gen. Contrs., Inc.*, 9 AD3d 823, 825 [2004]; *Dalanna, supra*; *Reilly v Newireen Assoc.*, 303 AD2d 214, 220-221 [2003], *lv denied* 100 NY2d 508 [2003]; *Buccini v 1568 Broadway Assoc.*, 250 AD2d 466, 468 [1998]). Admittedly, our case law on this issue is not consistent (*compare Singh, supra*; *Dalanna, supra*; *Reilly, supra*, and *Buccini, supra*; *with Brennan v 42nd St. Dev. Project, Inc.*, 10 AD3d 302 [2004]; *Bush v Gregory/Madison Ave.*, 308 AD2d 360 [2003]; *Freitas v New York City Tr. Auth.*, 249 AD2d 184 [1998], and *Gawel v Consolidated Edison Co. of N.Y.*, 237 AD2d 138 [1997]). The *Buccini* line of cases, however, comports with the overarching principle that liability under Labor Law § 200 or for common-law negligence may only be imposed on a general contractor or construction manager who controls the manner in which the plaintiff performed his or her work. The *Gawel* line of cases, upon which the dissent relies, deviate from that well-settled principle.

At bottom, the evidence submitted in support of Tishman's motion demonstrates that Tishman only exercised general supervisory powers (*O'Sullivan, supra*; *Cahill, supra*; *Singh, supra*; *Dalanna, supra*; *Reilly, supra*; *see Maes v 408 W. 39 LLC*, 24 AD3d 298 [2005], *lv denied* 7 NY3d 716 [2006]; *Dos Santos v STV Engrs., Inc.*, 8 AD3d 223 [2004], *lv denied* 4 NY3d 702 [2004]; *Vasiliades v Lehrer McGovern & Bovis*, 3 AD3d 400

[2004]), and plaintiffs, in opposition, failed to raise a triable issue of fact.

Supreme Court properly denied those aspects of A & B's cross motion seeking summary judgment dismissing plaintiffs' causes of action under Labor Law § 200 and for common-law negligence. Triable issues of fact exist regarding the identity of the operator of the concrete pump truck and his relationship to the entities engaged in the construction project. The identity of the operator of the truck—either Albert Spitzer, Jr., as claimed by A & B, or Albert Spitzer, Sr., as claimed by Hughes—reduces to a question of credibility and therefore cannot be determined on summary judgment (see Ferrante v American Lung Assn., 90 NY2d 623 [1997]). Additionally, regardless of the identity of the operator of the truck, triable issues of fact exist regarding whether the operator was an employee (or principal) of A & B, a special employee of Sorbara (see Thompson v Grumman Aerospace Corp., 78 NY2d 553 [1991]) or an independent contractor (see Greene v Osterhoudt, 251 AD2d 786 [1998]). Concur—Andrias, J.P., Gonzalez and McGuire, JJ.

Saxe and Buckley, JJ., dissent in part in a memorandum by Saxe, J., as follows: The majority modifies the order on appeal so as to grant summary judgment to defendant Tishman Westside Construction with respect to claims against it for common-law negligence and under Labor Law § 200. I respectfully dissent from the determination as it regards Tishman, and would instead affirm in its entirety the order denying summary judgment as against both A & B Preferred Concrete Pumping Service and Tishman Westside Construction.

Plaintiff, a concrete laborer employed by P.M. Sorbara, was seriously injured on April 10, 2001 during the pouring of concrete on the 14th floor of the building under construction at 270 West 44th Street in Manhattan. The accident occurred when the hose leading from a concrete pump truck on the street below became clogged. In an effort to clear the hose, it was disassembled prematurely, prior to the release of pressure that had built up in it, causing it to violently swing around and strike plaintiff and another employee.

Plaintiff testified that a construction superintendent, Simone Iannotta, who worked for construction manager Tishman, was present at the time the hose clogged, supervising the work, and was yelling for the workers to "hurry up" in clearing the jammed hose. Plaintiff specifically stated that Iannotta's yelling for the concrete workers to hurry up caused him to feel pressured to get the job done quickly, particularly since he knew that the concrete could not be sitting at street level for more

than an hour. While Iannotta later claimed that he could not remember whether or not he was actually present at the time of the accident, he recalled observing plaintiff covered in concrete and was aware of the accident. Iannotta also admitted that he did not report the accident to the site safety manager, who did not learn of the accident until May 2, 2001, and thus no investigation was performed.

Tishman also retained Site Safety, LLC to supervise the contractors and make certain that they complied with all safety regulations. A full-time site safety manager was to be present at the job at all times, safety meetings were held periodically, and the site safety manager made daily entries in a site safety log. The site safety manager, Lawrence Rizzo, Jr., testified that he observed construction superintendent Iannotta and project manager Dean Essen overseeing the work, and, indeed, observed Iannotta and Essen change the manner in which work was being performed on a daily basis if they thought it was being performed incorrectly.

An owner or contractor may only be held liable for an injury under Labor Law § 200 if it supervised or controlled the work giving rise to the injury (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]). A contractor's general supervisory control is insufficient to impute liability pursuant to Labor Law § 200, which liability requires actual supervisory control or input into how the work is performed (*see Sparendam v Lehr Constr. Corp.*, 24 AD3d 388, 389 [2005], *lv denied* 7 NY3d 703 [2006]; *Mitchell v New York Univ.*, 12 AD3d 200 [2004]). Nor is the mere presence of the general contractor's personnel on the site sufficient to infer supervisory control (*Matter of New York City Asbestos Litig.*, 25 AD3d 374 [2006]). However, the presence of a site safety coordinator who could stop work at the site would raise a triable issue of fact as to supervision and control sufficient to defeat a summary judgment motion (*see Bush v Gregory/Madison Ave.*, 308 AD2d 360, 361 [2003], citing, inter alia, *Freitas v New York City Tr. Auth.*, 249 AD2d 184, 186 [1998]).

The majority concludes that Tishman established as a matter of law that it did not exercise supervision or control over the work, in that the means and methods of the concrete work was exclusively controlled by plaintiff's employer, Sorbara, as demonstrated by plaintiff's testimony that all orders with respect to the concrete work came from the Sorbara supervisor. The majority quotes at length the testimony of witnesses indicating that Tishman did not direct or control the work of Sorbara or A & B, and that Sorbara controlled the concrete work.

However, it is not the strength of Tishman's showing that is at issue; the question is whether plaintiff's evidence created a question of fact on the issue of whether Tishman exercised supervision and control over the work. I disagree with the majority's conclusion that plaintiff failed to offer evidence creating a question of fact on that issue. First, although Site Safety's witness, Rizzo, asserted that Sorbara's means and methods of pouring concrete were not supervised or controlled by Tishman, he also stated that he observed Iannota and Essen instruct workers on a daily basis to change the manner in which the work was being performed. Second, as the IAS court recognized, when the construction manager's superintendent yells at workers to hurry up, and the workers feel pressured to act quickly in response, it is possible to infer that the superintendent has the authority to direct them, and, indeed, to take action against them should the workers disobey his commands. Third, Tishman hired a safety manager empowered to stop the work. These circumstances, together with all appropriate possible inferences, are sufficient to raise an issue of fact as to Tishman's supervision and control over the concrete work. Accordingly, I would deny Tishman's motion for summary judgment.